[No. A072629. First Dist., Div. Four. Apr. 28, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
MAURICE GAINES, Defendant and Appellant.

## COUNSEL

Jonathan D. Soglin, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, George F. Hindall III and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**POCHÉ, Acting P. J.**—In this case we hold that a prosecutor commits misconduct when he purports to tell the jury why a defense witness did not testify and what the testimony of that witness would have been.

### BACKGROUND

The victim, John Rutledge, testified that he was riding his bicycle home from work about midnight. Near the corner of Tennessee and Tuolumne

streets in Vallejo, two young Black men on foot approached him. The men began punching Rutledge in the face, knocking him off his bike. The hitting continued as the men demanded that Rutledge "Give me the bike." The men took his bike and went down Tennessee Street. Within five minutes Rutledge found Officer Delagadillo several blocks down Tuolumne Street and reported the theft.

Within a minute of hearing a radio broadcast about the attack, Officer Herndon saw two Black men riding bikes turn off Tennessee Street. Defendant Maurice Gaines was one of the two. When the two riders separated, Herndon stopped the one who was not defendant. Shortly thereafter Officer Delagadillo drove over with Mr. Rutledge, who identified the suspect as one of the attackers. Rutledge also identified as his the bike the man had been riding. Just then another officer radioed that he had stopped someone who might be the other attacker. Delagadillo drove Rutledge back to Tuolumne Street, where Rutledge identified defendant.

Defendant's version of events was that he was on his way home from his girlfriend's house, riding her brother's bicycle, when he was stopped by police. He tried to avoid the police because there was an outstanding warrant for his arrest on a drunk driving charge.

A jury found defendant guilty as charged of second degree robbery (Pen. Code, § 211). He perfected this timely appeal after the trial court admitted him to probation upon specified conditions.

## REVIEW

■ Defendant testified that one Ray Hicks had been with him up until the point at which defendant started home. The following occurred during the prosecutor's cross-examination:

"Q. [Ray] Hicks is the gentleman that has been sitting . . . in the back of the courtroom here from time to time throughout this trial over the last couple of days; isn't that right?

"A. Yes.

"Q. Mr. Hicks here to testify for you?

"A. Yes.

"Q. He is?

"A. Yes.

"Q. He's going to testify for you?

"Mr. Gladstone [defense counsel]: Objection.

"The Court: Sustained.

"[The Prosecutor]: Do you know if he's been subpoenaed to testify for you?

"Mr. Gladstone: Objection.

"The Court: Sustained."

After defense counsel in his closing argument told the jury "So if you want to know . . . what Ray Hicks would have said, . . . the responsibility lies with the District Attorney," the prosecutor responded:

"Mr. Gladstone actually stated that if there's a witness missing that you would like to hear from, it's my duty to bring that witness here, whether that witness is somebody who would prove my case or tend to prove his. [¶] Why did Mr. Gladstone make those remarks? They don't seem to follow common sense and, indeed, they don't. Mr. Gladstone was sensitive to something. He was worried about the inferences we are going to draw from the absence of one of his alibi witnesses, Mr. Hicks. . . . [¶] If Mr. Hicks were here, he could corroborate that [defendant's] story. . . . This friend of the defendant, this person that presumably would like to help him out, could help the defendant. Where is Mr. Hicks? We know about Mr. Hicks. Mr. Hicks was sitting in this courtroom. Mr. Hicks didn't testify. That decision was made after the defendant testified, because the defendant slipped and he told some untruths. And Mr. Hicks was going to testify to the contrary. Mr. Hicks would have impeached the defendant, and it was the defense that got Mr. Hicks out of here before he could damage them. It was the People that were trying to find Mr. Hicks at that point.

"Mr. Gladstone: I'm going to object to that, your Honor, as going beyond the evidence in this case.

"The Court: All right. Sustained.

"[The Prosecutor]: Ladies and gentlemen, we are allowed to draw fair inferences from things. We are allowed to say well, where is that witness that the defendant says would corroborate his alibi if he were here. And

that's not just permissible, but I think in this case it's a matter of logic, common sense and necessity. Where was Mr. Hicks?"

This was misconduct. Although "a prosecutor may argue to a jury that a defendant has not brought forth evidence to corroborate an essential part of his defensive story" (*People* v. *Varona* (1983) 143 Cal.App.3d 566, 570 [192 Cal.Rptr. 44]), the comments here were not so limited. The objection made and sustained by the trial court during the prosecutor's argument can be reasonably read as applying to any or all of the prosecutor's statements that (1) Hicks's testimony would have impeached defendant's version, (2) the defense had somehow "got Mr. Hicks out of here," and (3) the People had tried to get Mr. Hicks on the stand once it had become clear Hicks would not be called by the defense. All three of these subjects were matters concerning which there was no "evidence in this case" as defense counsel asserted. But to say only that the prosecutor got ahead of his evidence is far too benign. The prosecutor was in plain effect presenting a condensed version of what he was telling the jury would have been Mr. Hicks's testimony. When this tactic is achieved in the guise of closing argument, the defendant is denied Sixth Amendment rights to confrontation and cross-examination. (E.g., *People* v. *Harris* (1989) 47 Cal.3d 1047, 1083 [255 Cal.Rptr. 352, 767 P.2d 619]; *People* v. *Bolton* (1979) 23 Cal.3d 208, 215, fn. 4 [152 Cal.Rptr. 141, 589 P.2d 396] ["The prosecutor, serving as his own unsworn witness, is beyond the reach of cross-examination."].) Because this error has federal constitutional magnitude, it requires reversal unless we are satisfied beyond a reasonable doubt that the misconduct did not affect the jury's verdict. (*Chapman* v. *California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]; *People* v. *Harris, supra*, 47 Cal.3d 1047.)

The prosecution's case against defendant was far from conclusive. That case consisted of Mr. Rutledge's testimony and circumstances of chronology and geography which, in light of that testimony, appeared to disfavor defendant. Within minutes of the crime he was seen by Officer Herndon in the company of a man who was apprehended in possession of Rutledge's bicycle; defendant was arrested within minutes of the crime, close to the scene of the crime, and the victim identified him within a few more minutes. However, there was no physical evidence linking him to the assault—it was the other attacker, not defendant, who was apprehended in possession of Rutledge's bicycle. There was no witness who corroborated Mr. Rutledge's version of the attack. The prosecution's case against defendant therefore hinged upon Rutledge's identification of defendant. That identification was less than ironclad.

Mr. Rutledge identified defendant virtually at the scene, and Officer Delagadillo recalled the identification as "certain." However, Rutledge's testimony at trial was considerably less emphatic. He recalled (as did Officer Herndon who was with him) being "80 percent certain" that defendant was one of his attackers at the time a pretrial physical lineup was conducted. At the lineup Rutledge marked a card that defendant was "maybe" involved; defendant was "A very good possibility" but "Not a certainty." At trial Mr. Rutledge testified that defendant "looks the same" "looks very familiar" as one of the robbers; Rutledge was "fairly certain."

The prosecutor's improper remarks were not a glancing blow directed at a peripheral target. They were a head-on assault at the defense. Their unmistakable import was that defendant had lied on the stand and Hicks refused to corroborate the lies. The prosecutor's remarks were therefore "designed and calculated to make [defendant's] version of the evidence worthless" in the eyes of the jury. (*Chapman v. California, supra,* 386 U.S. 18, 26 [87 S.Ct. 824, 829].)

The record shows a moderately strong prosecution case confronting a defense of innocent and inadvertent presence near a crime. That defense, if not compelling, was far from preposterous. These circumstances are very similar to those in *Chapman v. California, supra,* 386 U.S. 18. The California Supreme Court refused to reverse for improper prosecutorial comments because evidence of the defendants' guilt "must be deemed overwhelming." (*People v. Teale* (1965) 63 Cal.2d 178, 197 [45 Cal.Rptr. 729, 404 P.2d 209].) The United States Supreme Court reversed, holding ". . . though the case . . . presented a reasonably strong 'circumstantial web of evidence' against [the defendants], . . . it was also a case in which, absent the constitutionally forbidden comments, honest, fair-minded jurors might very well have brought in not-guilty verdicts. Under these circumstances, it is *completely impossible* for us to say that the State has demonstrated, beyond a reasonable doubt, that the prosecutor's comments . . . did not contribute to [the defendants'] convictions." (*Chapman v. California, supra,* at pp. 25-26 [87 S.Ct. at p. 829], italics added, citation omitted.) After a careful review of this record, we cannot declare an abiding conviction that the prosecutor's misconduct was utterly irrelevant to the jury's verdict.

In light of this conclusion, defendant's other contentions need not be addressed.

The order of probation is reversed.

Reardon, J., and Hanlon, J., concurred.