Filed 7/30/13  P. v. Jamieson CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G045812 |
| v. | (Super. Ct. No. 09NF0726) |
| WARREN SPAIN JAMIESON, | O P I N I O N |
| Defendant and Appellant. | |
| In re WARREN SPAIN JAMIESON | G048218 |
| on Habeas Corpus. | |

Appeal from a judgment of the Superior Court of Orange County, James A. Stotler, Judge.  Original proceeding; petition for a writ of habeas corpus, after judgment of the Superior Court of Orange County.  Judgment affirmed.  Petition denied.

Dacia Burz, under appointment by the Court of Appeal, for Defendant and Appellant and for Petitioner.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

The Orange County District Attorney filed an information charging defendant Warren Spain Jamieson with 12 counts of committing a lewd act on a child under the age of 14 (Pen. Code, § 288, subd. (a)) with allegations he committed the acts on multiple victims (Pen. Code, §§ 667.61, subds. (b), (c), & (e)(4); 1203.066, subd. (a)(7)), and had substantial sexual conduct with each of them (Pen. Code, § 1203.066, subd. (a)(8). A jury found defendant guilty on 11 counts with true findings on the multiple victim allegations as to each count, plus true findings of substantial sexual conduct on 9 counts. The court declared a mistrial on count 12 after the jury could not reach a verdict on it. Defendant received an aggregate sentence of 60 years to life, consisting of four consecutive 15-years-to-life terms, one for each victim, and identical concurrent terms for the remaining charges.

In his appeal, defendant contends his trial attorney failed to provide him with effective assistance of counsel on two independent grounds. He also raises claims of evidentiary and instructional error, and prosecutorial misconduct. His consolidated habeas corpus petition also seeks relief on one of the grounds of ineffective assistance of counsel. Finding no prejudicial error, we affirm the judgment and deny the petition.

2

FACTS

*1. Counts 7 Through 12*

Jane Doe 4 was born in 1984. She is the daughter of T.J. In 1992, T.J. married defendant. The two later had a daughter together.

Doe 4 testified that when she was 10 years of age, defendant began touching her breasts (count 7) and her vagina (count 8) and inserting his finger inside her vagina (count 9). When Doe 4 was between 12 and 14 this conduct occurred two to three times a week. In addition, she claimed defendant would move her hand up and down on his penis (count 10) and place his mouth on her breasts (count 11). Each of these acts occurred once or twice a week. Doe 4 further asserted that when she was 11 or 12 defendant began engaging in sexual intercourse with her two to three times each month (count 12). Several times she found him lying next to her when she was in bed.

According to Doe 4, she started to become disruptive when she was 13 or 14 years old. She admitted lying, running away from home, and hanging out with the wrong type of people. But T.J. testified her difficulties with Doe 4 started long before her daughter turned 13 and acknowledged her daughter would lie about "[a]lmost anything that you can imagine." In late 1997, T.J. sent Doe 4 to live with other relatives for several months. She eventually began living with her grandmother while visiting T.J. and defendant on weekends.

In May 1998, Doe 4 told a friend about defendant's sexual abuse of her. The police were called.

Doe 4 testified she told the police that defendant began touching her when she was 10 years old, sucking her breasts and placing his finer in her vagina. But she admitted "I didn't tell them exactly everything." In addition, Doe 4 admitted telling the

3

police two falsehoods; defendant never exposed himself to her and that he once laid down next to her and asked "Can I eat the Y?"

A juvenile dependency petition was filed by the Orange County Social Services Agency containing allegations of failure to protect and sexual abuse. Doe 4 and her half-sister were removed from T.J.'s custody and placed at Orangewood. T.J. separated from defendant in June after the agency told her it was necessary if she wanted to regain custody of her daughters.

In October 1998, the juvenile court held a jurisdictional hearing where Doe 4 testified in camera with the judge, counsel, her grandmother, and court reporter present. T.J. was not present, but the court reporter later read Doe 4's testimony to her. Shortly thereafter, the dependency proceeding ended and T.J. regained custody of Doe 4 and her other daughter. T.J. then attempted to reconcile with defendant, but he refused because he was already seeing another woman.

On direct examination, Doe 4 denied that in 1998 she lied "about what happened to [her]," or "made everything up." But she admitted not telling the police everything, "because I felt that I wouldn't be believed. I felt like a bad kid." After showing Doe 4 a document (police department status report stating a social worker informed the department the dependency case was dismissed because Doe 4 admitted lying to the police), the prosecutor asked her a second time if she ever lied to the police. She responded "I don't remember saying anything like that at all."

On cross-examination, Doe 4 acknowledged the statements she gave to the police in 1998 differed from what she reported when the police contacted her in 2009. In 1998, she told the police defendant had touched her four times, twice when she was in fourth grade and twice in her fifth grade year. But at trial, she testified to numerous touchings that occurred on a weekly basis and expanded the nature of the molestation to include stroking defendant's penis and sexual intercourse. Doe 4 acknowledged that, in 1998 she said the molestation occurred while her mother was taking a shower or

4

shopping, but at trial testified it happened while her mother was at work. She also admitted making up the account of defendant asking if he could engage in cunnilingus. But she claimed her testimony in the juvenile dependency proceeding was consistent with her previous statements to the police.

*2. Counts 1 Through 6*

In 1998, S.B. leased a two-bedroom apartment where she lived with her two children, D.B. and a son. S.B. met defendant and the next year, he moved into her apartment. They slept in one bedroom and the children slept in the second bedroom.

S.B.'s sister, G.C., had three daughters; Jane Doe 1, born in 1991, Jane Doe 2, born in 1992, and Jane Doe 3, born in 1995. Beginning in the late 1990's, Does 1, 2, and 3 frequently stayed overnight at their aunt's apartment.

Doe 1, the victim named in counts 1 and 2, testified that while staying at her aunt's apartment one night when she was nine years old, she awoke to find defendant with his hand under her night shirt rubbing her vagina and placing his fingers between the labia. He stopped when she got up to go to use the bathroom. On another occasion, Doe 1 awoke when she felt defendant rubbing her vagina over her sweatpants. Again, she went to the bathroom.

Doe 2, the victim named in counts 3, 4, and 5, testified that when she was seven or eight and staying overnight at her aunt's apartment, defendant laid down next to her, placed his hand inside her pants and touched her vagina, moving his finger in and out of it. He did the same with her anus. Doe 2 claimed she quietly said "stop," but he continued touching her. Defendant was lying so close to her that she noticed he had an erection. Doe 2 testified to another occasion where defendant laid down next to her while she was sleeping and again touched her vagina in the same manner. A third touching occurred when, after Doe 2 fell asleep on a couch, she awoke to find defendant next to her with his hand in her pants rubbing her vagina over her underwear.

5

Doe 3, the victim named in count 6, testified that one night when she was five or six years old she woke up to find defendant holding her hand and moving it up and down on his penis. Once she realized what was happening, Doe 3 sat up and backed away from defendant. She described defendant as wearing only a shirt and being naked from the waist down.

Does 1 and 2 both testified that on several occasions they awoke to find defendant either lying or sitting next to them. All three witnesses acknowledged not telling anyone about defendant's behavior at the time. Some years later, the three discussed the matter with their cousin D.B. According to Does 2 and 3, D.B. persuaded them not to tell anyone what had happened.

The allegations came to light in 2009, when Doe 1 wrote a paper for a high school class in which she acknowledged having been molested. She then told her mother what had occurred. G.C. spoke with Does 2 and 3, and they also admitted being molested by defendant. Eventually, G.C. contacted the police.

Doe 4 spoke with the police again after defendant's arrest. She testified she was upset because "they didn't believe me the first time and it could have possibly been prevented." She also felt some responsibility for the other molestations because she did "not tell[] the whole truth."

DISCUSSION

1. *Erroneous Admission of Evidence*

During pretrial discovery, it was learned the transcript of Doe 4's in camera testimony during the 1998 dependency proceeding had been destroyed. At trial, immediately after T.J. admitted listening to the court reporter read back Doe 4's dependency proceeding testimony, the prosecutor asked, "[a]re you aware of anywhere

6

she [Doe 4] admitted to having previously lied to the police?" T.J. said "No." Defense counsel objected on the grounds the answer called for hearsay and lacked foundation.

The court overruled the objections and allowed the answer to remain. Defendant argues the trial court's ruling was error. He contends because T.J. was not present for Doe 4's in camera testimony, the prosecutor's question referred to what T.J. learned from the read back of it and thus invited hearsay.

Under the circumstances, we agree the trial court erred in not striking the answer. Doe 4 testified she never told her mother about being molested by defendant. Nor was T.J. present when the police questioned Doe 4 about her accusations. Except for hearing the read back of Doe 4's in camera testimony, T.J. had no personal knowledge about whether her daughter admitted she lied to the police. (Evid. Code, § 702, subd. (a).) *People v. Hedrick* (1968) 265 Cal.App.2d 392 presents an analogous situation. *Hedrick* held the trial court properly sustained an objection to the defendant's testimony about what he "'ascertained'" when investigating a missing shipment of victim's merchandise. "There was no evidence that [the defendant] was on board the ship or that he saw the crates after they were placed on the ship" and "[e]ven if he had been permitted to answer . . . it is apparent that whatever he might have said that he ascertained, . . . would not be information within his personal knowledge." (*Id.* at p. 399.)

Nonetheless, the ruling did not prejudice defendant. Defendant claims Doe 4's credibility was a crucial issue at trial and, in light of defense counsel's impeachment of her on cross-examination, the erroneous admission of T.J.'s answer allowed the prosecution to rehabilitate Doe 4. But whether Doe 4 admitted lying to the police during the 1998 dependency hearing was a collateral issue. Doe 4 admitted at defendant's trial that not only did she fail to tell the police everything, she even acknowledged lying to them and also lying under oath in the dependency proceeding. In light of these admissions, T.J.'s view of Doe 4's testimony was of little consequence. Moreover, given T.J.'s acknowledgement Doe 4 had always been a difficult child and willing to lie about

7

anything, it's unlikely the jury viewed her response to the prosecutor's question as rehabilitating her daughter. Any error in allowing T.J.'s response was harmless. (Evid. Code, § 353, subd. (b); *People v. Watson* (1956) 46 Cal.2d 818, 836.)

## 2. *Ineffective Assistance of Counsel*

Defendant contends his trial attorney rendered ineffective assistance of counsel by failing to (1) adequately investigate and seek to introduce evidence the 1998 juvenile dependency proceeding was dismissed on the merits after a contested jurisdictional hearing, and (2) object to statements by the prosecutor during closing argument that purportedly vouched for the credibility of Does 1, 2, and 3. The first claim is also the subject of the consolidated habeas corpus petition.

To establish a claim of ineffective assistance of counsel, a defendant "must establish not only deficient performance, i.e., representation below an objective standard of reasonableness, but also resultant prejudice." (*People v. Bolin* (1998) 18 Cal.4th 297, 333; see also *In re Crew* (2011) 52 Cal.4th 126, 150.) For prejudice, "the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (*People v. Bolin, supra,* 18 Cal.4th at p. 333.)

### a. *Investigation and Use of the Dependency Proceeding's Record*
#### (1) Background

Defense counsel filed a pretrial request with the Orange County Juvenile Court for disclosure of "[a]ll records containing the statements, allegations, and/or sworn testimony of [Doe 4] during the . . . proceedings in 1998 wherein she alleged sexual abuse by [defendant]," including "[c]opies of records and any reporter's transcript . . . ." (Welf. & Inst. Code, § 827.) Counsel received three documents, one of which was an

8

October 30, 1998 minute order that noted the jurisdictional hearing had been continued to November 23. No effort was made to obtain documentation related to the latter hearing.

At a pretrial hearing the prosecutor asked the court to preclude defense counsel from mentioning the dismissal of the dependency case. Defense counsel said T.J. could testify to that fact. The court questioned "the relevance of that case . . . be[ing] dismissed." Defense counsel responded, "I'm not calling [T.J.] to testify the case was dismissed." The court ordered counsel, "if you decide you want to ask that question, . . . approach the bench . . . and . . . ask permission . . . ."

During defense counsel's cross-examination of Doe 4, the juvenile dependency's dismissal came up again. The court explained "I did not rule that this area [the dismissal of the dependency case] could not be gone into at all," but rather "if you want to go into the fact that the case was dismissed ask permission first." Defense counsel never sought permission to do so.

While this appeal was pending, defendant's appellate counsel filed a separate disclosure request with the juvenile court that included "'any other minute order and record after October 30, 1998, showing dismissal of the case.'" Appellate counsel received a copy of a November 23, 1998 minute order. It reflected the juvenile court: (1) Granted the county's motions to dismiss count 1 (Welf. & Inst. Code, § 300, subd (b) [failure to protect]), and to amend count 2 (Welf. & Inst. Code, § 300, subd. (d) [sexual abuse]) to conform to proof; (2) denied the "motion by counsel for Jamieson father . . . to declare mistrial"; and (3) after hearing closing argument, dismissed the petition both as to Doe 4 and her half-sister.

*(2) Analysis*

Defendant's first ineffective assistance of counsel claim relates to defense counsel's alleged omissions concerning discovery and use of potentially exculpatory evidence from Doe 4's 1998 juvenile dependency proceeding. He notes the October 30

9

minute order stated the jurisdictional hearing had been continued to November 23 and that defense counsel learned from other discovery the dependency proceeding was dismissed. But defense counsel failed to submit a second disclosure request and, had he done so, he would have learned that after Doe 4's in camera testimony the petition's sexual abuse allegations were amended and the juvenile court dismissed the petition on the merits. Defendant argues defense counsel rendered ineffective assistance by failing to obtain documentation of the dependency proceeding's dismissal to admit it at trial.

In a declaration by defense counsel attached to the habeas corpus petition, he acknowledged reviewing the October 30, 1998 juvenile court minute order and being aware the matter had been continued to November 23. But other than citing the scope of his original disclosure request and asserting that without a "transcript of the proceeding, the basis for the dismissal . . . remains unclear," defense counsel, does not explain why he did not file a pretrial request for a copy of the November 23 minute order. As for his failure to seek admission of evidence on the dependency proceeding's dismissal, defense counsel's declaration states he knew about its potential relevance, but claims the trial judge denied his request to introduce evidence of it during a pretrial hearing. The record reflects that is not an accurate description of what occurred.

Nonetheless, it does not appear these omissions prejudiced defendant. Since "'[t]he object of an ineffectiveness claim is not to grade counsel's performance'" (*In re Cox* (2003) 30 Cal.4th 974, 1019), where "'it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" (*Id.* at pp. 1019-1020; quoting *Strickland v. Washington* (1984) 466 U.S. 668, 697 [104 S.Ct. 2052, 80 L.Ed.2d 674].)

Defendant claims the dependency proceeding's dismissal was relevant to rebut what he describes as Doe 4's "testimony about the uncharged sexual assault offenses that [he] ostensibly committed against her," and to "undermine" both "Doe 4's credibility," and that of Does 1, 2, and 3. Both contentions lack merit.

10

To support his uncharged misconduct argument, defendant relies on *People v. Griffin* (1967) 66 Cal.2d 459. *Griffin* involved a murder prosecution for a death that allegedly occurred during an attempted rape where the trial court allowed the prosecution to introduce evidence of a similar attack on a woman in Mexico, but precluded the defense from showing the defendant had been acquitted of any crime. The Supreme Court agreed the uncharged conduct was admissible, but held it was error not to also allow proof of the acquittal. "[T]he better rule allows proof of an acquittal to weaken and rebut the prosecution's evidence of the other crime. [Citations.]" (*Id.* at p. 465.)

But even assuming *Griffin* applies where the prior conduct allegedly occurred in a noncriminal context, defendant's argument fails. Here, the jury was never asked to decide or instructed on whether uncharged acts of molestation by defendant inferentially supported his conviction of the charged crimes. Rather, for Does 1, 2, and 3 the prosecution chose to rely on the specific acts each victim described to support conviction on counts 1 through 6. As for Doe 4, the prosecution alleged one count for each type of sexual conduct she testified he committed during the years he purportedly molested her. Along with these charges the jury was instructed that to convict defendant they had to unanimously agree he either (1) "committed at least one of these acts and . . . agree on which act was committed for each offense," or (2) "agree . . . the defendant committed all of the acts alleged to have occurred during this time period and . . . defendant committed at least the number of offenses charged." Consequently, the prosecutor withdrew her initial request for an instruction on the jury's consideration of evidence of uncharged sexual offenses (CALCRIM No. 1191).

Thus, the relevance of the evidence about the juvenile dependency proceeding solely concerned Doe 4's credibility. As discussed above, the defense was able to challenge Doe 4's credibility through T.J.'s testimony concerning her daughter's behavior and eliciting from Doe 4's admissions that she had previously lied and told half-truths about defendant's actions. Furthermore, it is clear from the testimony of these

11

witnesses the jury knew the dependency proceeding terminated without any finding of misconduct by defendant contrary to his interests. T.J. acknowledged that after the dependency proceeding ended she regained custody of both of her daughters. She also admitted defendant was allowed to regularly see his child and keep her for overnight visits. T.J. even acknowledged she attempted to reconcile with defendant. For her part, Doe 4 testified she became upset upon learning of the subsequent charges involving the other three victims and feeling she was partly responsible for those molestations.

Moreover, defendant's claim "the evidence at trial showed that there was a connection between Does 1, 2, 3, and 4" is tenuous at best. Doe 1, 2, and 3 admitted learning Doe 4 alleged defendant molested her. But they never met or spoke with Doe 4 and did not know the details of her claims. Also, it is unclear when Does 1, 2, and 3 learned of Doe 4's allegation. Doe 3 testified she learned of Doe 4 from her sisters, but could not recall when they told her. Doe 1 testified she learned about Doe 4's allegations from D.B., S.B.'s daughter, when S.B. and her family "were living in the new house right now."

Thus, trial counsel's failure to seek further discovery from the juvenile dependency file and his failure to introduce evidence of that proceeding's dismissal was harmless. "'[T]he petitioner must establish "prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel . . . ." . . . The incompetence must have resulted in a fundamentally unfair proceeding or an unreliable verdict. [Citation.]' [Citation.]" (*In re Cox, supra,* 30 Cal.4th at p. 1016.) Defense counsel's omissions do not undermine our confidence in the outcome of this case.

### b. Failure to Object to Prosecutorial Misconduct

During her rebuttal argument, the prosecutor stated, "[I]t's so easy to criticize decision-making and blame the victim for not being how a victim should be, but that's why I asked you when I picked you as jurors whether you had any preconceived

12

notions about how a victim is supposed to act when they're supposed to report, how they're supposed to act during an assault, how they're supposed to testify. Does crying make it true? Does lack of [c]rying not make it true? No. Nothing in a vacuum. No definition defines a victim of sexual assault. . . ." Trial counsel did not object to this argument.

Citing comments by the prosecutor during jury voir dire, defendant claims the foregoing statement "improperly vouched for the credibility of [Doe 1, Doe 2, and Doe 3]" because it allowed her to "substantively argue[] . . . the preconceptions she had identified . . . about when a sexual assault victim should report and how sexual assault victims should act were misconceptions." Further, since a failure to timely object and ask the jury be admonished to disregard the comment waives a prosecutorial misconduct claim (*People v. Cunningham* (2001) 25 Cal.4th 926, 1000-1001), he further argues trial counsel's failure to object constituted ineffective assistance of counsel. We disagree.

We find the prosecutor's argument did not constitute misconduct. "A prosecutor commits misconduct by referring in argument to matters outside the record. [Citation.]" (*People v. Cunningham, supra,* 25 Cal.4th at p. 1026.) But "the prosecution has broad discretion to state its views regarding which reasonable inferences may or may not be drawn from the evidence," and "[a]rguments by the prosecutor that otherwise might be deemed improper do not constitute misconduct if they fall within the proper limits of rebuttal to the arguments of defense counsel. [Citation.]" (*Ibid*.) In addition, "An attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel. [Citation.]" (*People v. Kelly* (1992) 1 Cal.4th 495, 540.)

Defendant acknowledges, the prosecutor "did not explicitly refer to expert knowledge," but suggests she "strongly and reasonably implied . . . she had an outside source and authoritative knowledge about misconception on the behavior of molest victims . . . ." Nothing in either the prosecutor's jury voir dire comments quoted in the

13

opening brief or her argument suggests she was relying on the existence of some expertise beyond the trial record.

Rather, as the Attorney General notes, this portion of the prosecutor's argument responded to defense counsel's statements in closing argument that Does 1, 2, and 3 "would ask to stay over" to their aunt S.B.'s home and stated, "Is that conduct consistent with the repeated victimization at the hands of the defendant?" Under the circumstances, defendant has not shown the prosecutor's comments amounted to misconduct, and thus cannot establish this ineffective assistance of counsel claim has merit.

### 3. Failure to Give CALCRIM No. 1191-A

As noted, the prosecutor withdrew her request the jury be instructed on uncharged sexual crimes under CALCRIM No. 1191. In place of that instruction, she submitted a modified version of the standard instruction, the court designated the modified instruction as CALCRIM No. 1191-A. The proposed instruction stated in part: "If you decide that the defendant committed any one or more of the charged offenses, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit any of the other charged offenses. [¶] If you conclude that the defendant committed any one or more of the charged offenses, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of any of the charged offenses. The People must still prove each charge beyond a reasonable doubt."

Initially, the trial court agreed to give CALCRIM No. 1191-A. Both parties presented their closing arguments, and during her argument the prosecutor referred to this proposed instruction. Thereafter, while agreeing "it's a proper argument to a jury to say that you can look at one count and you can draw certain inferences from that count," the

14

court decided not to give the modified instruction. The court offered both attorneys an opportunity to reopen closing argument, but each declined to do so. However, the court did give the jury a special instruction, stating, "If [counsel] mentioned that you would be given any jury instructions that you are not now being given, you are not to infer anything from that omission."

Citing *People v. Villatoro* (2012) 54 Cal.4th 1152, 1160-1161, defendant argues the trial court's decision not to give the modified jury instruction was error, and "the combined effect of the omitted limiting instruction and the prosecutor's closing argument about inferring [his] propensity to commit sex offenses confused and misled the jury so as to allow them to apply a lesser standard of proof" and the error was prejudicial.

This argument lacks merit. In *Villatoro*, the Supreme Court held "nothing in the language of [Evidence Code] section 1108 restricts its application to uncharged offenses" (*People v. Villatoro, supra,* 54 Cal.4th at p. 1164), and "perceive[d] no reason why the Legislature would exclude charged sexual offenses from [the statute's] purview, and no indication that it did so" (*ibid.*). *Villatoro* also approved an instruction similar to the one rejected in this case. "Unlike the standard pattern instruction CALCRIM No. 1191 which refers to the use of uncharged offenses, the modified instruction did not provide that the charged offenses used to prove propensity must be proven by a preponderance of the evidence. Instead, the instruction clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity. Thus, there was no risk the jury would apply an impermissibly low standard of proof. [Citation.] Moreover, the court instructed the jury with CALCRIM No. 220, which defines the reasonable doubt standard and reiterates that the defendant is presumed innocent; it also explains that only proof beyond a reasonable doubt will overcome that presumption. The modified version of CALCRIM No. 1191 did not impermissibly lower the standard of proof or otherwise interfere with defendant's presumption of innocence." (*People v. Villatoro, supra,* 54 Cal.4th at pp. 1167-1168.)

15

The same comments apply to this case. The court never instructed the jury on any burden of proof other than proof beyond a reasonable doubt. In her closing argument, the prosecutor stated "once you find any of these charged counts beyond a reasonable doubt, you can consider that to infer that the defendant had the propensity to commit sexual offenses. You can also infer that he was likely to commit the other offenses." Thus, "there was no risk the jury would apply an impermissibly low standard of proof." (*People v. Villatoro, supra,* 54 Cal.4th at p. 1168.) Defendant's argument to the contrary is unavailing.

### 4. Improper Prosecutorial Argument

Finally, defendant makes a second attack on the prosecutor's closing argument. Defendant argues that, after citing defense counsel's failure to call D.B. as a witness as he promised in opening statement, the prosecutor improperly vouched for the credibility of Does 1, 2, and 3 by "present[ing] a condensed version of what [D.B.'s] testimony would have been." The Attorney General disagrees with this interpretation of the prosecutor's comments and also contends defendant waived the issue by failing to properly object. While defendant did not waive this issue, the record fails to support his argument.

During opening statement, defense counsel told the jury they would hear from S.B. and her daughter D.B., stating "[D.B.] will tell you – this is the girl that the sisters [Does 1, 2, and 3] were closest to – [she] actually never saw or heard anything." However, the defense later decided not to call D.B. as a witness.

During rebuttal argument, the prosecutor stated, "[T]alk about failure to call a logical witness. That's why I talked about how things are not evidence and please listen carefully. [Defense counsel] said in opening statement, [D.B.], you'll hear that [D.B.] didn't see anything, anyone, on these nights. Well, that's why I asked [S.B.] . . . if she came to court with [D.B.] so that I could make this argument later. [D.B.] was here.

16

Failure to call a logical witness, if she were going to come in and say: '[Does 1, 2, and 3] never told me, they never disclosed to me and I never told them.'"

At this point, defense counsel objected, citing "improper argument." The court overruled the objection. The prosecutor then continued: "If she were going to say anything to the contrary, she was here at court. The defense could have called her . . . . [S]he was here and has that information, and [defense counsel] told you in opening [statement] you would hear that, and you didn't. So disregard that because that's not evidence. She was in the bedroom. She could have testified, well, I didn't see or hear anything, but she didn't. So you're not supposed to speculate about that . . . ."

Contrary to the Attorney General's argument, while "'[a]s a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety[]'" (*People v. Hill* (1998) 17 Cal.4th 800, 820), the defense adequately preserved this issue. Defense counsel's assertion that the prosecutor's statements constituted "improper argument" satisfied the first requirement. Counsel did not ask for the jury to be admonished, but "the absence of a request for a curative admonition does not forfeit the issue for appeal if 'the court immediately overrules an objection to alleged prosecutorial misconduct [and as a consequence] the defendant has no opportunity to make such a request.' [Citations.]" (*Id.* at pp. 820-821.)

Even so, the prosecutorial misconduct claim lacks merit. "'[P]rosecutorial comment upon a defendant's failure "to introduce material evidence or to call logical witnesses" is not improper. [Citations.]' [Citation.]" (*People v. Wash* (1993) 6 Cal.4th 215, 263.) As the prosecutor noted, defense counsel told the jury during opening statement that D.B. would "tell you . . . [she] actually never saw or heard anything." D.B. was a logical witness with respect to the molestation allegations contained in counts 1 through 6. Does 1, 2, and 3 testified these acts occurred at night while they slept in the

17

bedroom where D.B. and her brother were also sleeping. They also claimed D.B. was present when each of them initially acknowledged having been molested by defendant. The prosecutor's comment on the failure to call D.B. as a witness was fair game.

Defendant argues the prosecutor went beyond merely commenting on the failure to call D.B.'s as a witness by "improperly claim[ing D.B.'s] testimony would have corroborated [Does 1, 2, and 3's] testimonies . . . ." "It has been held prejudicial misconduct and prejudicially erroneous for the prosecution to comment on the failure of a witness to appear and that had he done so, he would have testified in a certain manner or to facts not in evidence . . . ." (*People v. Wolfe* (1954) 42 Cal.2d 663, 668.) But a fair reading of the prosecutor's comment does not support defendant's interpretation. The prosecutor prefaced her reference to defense counsel's mention of D.B. in opening statement by noting "how things are not evidence . . . ." After the court overruled defense counsel's objection, the prosecutor asserted "[i]f [D.B.] were going to say anything to the contrary, she was here at court," and "could have testified, well, I didn't see or hear anything, but she didn't." The prosecutor thus urged the jury to "disregard" what defense counsel had predicted D.B. would testify to if called as a witness.

*People v. Gaines* (1997) 54 Cal.App.4th 821, the case on which defendant relies, is distinguishable. There the defendant testified he was with another person shortly before the crime occurred. The defense did not call the witness and thereafter the prosecution could not locate him. During rebuttal, the prosecutor argued the witness would have impeached defendant's testimony and the defense "had somehow 'got [the witness] out of here.'" (*Id.* at p. 825.) *Gaines* is a far cry from this case, where the prosecutor urged the jury to disregard what defense counsel claimed a person not called to testify would have said if she took the stand. Under the circumstances, the trial court properly overruled defense counsel's objection.

DISPOSITION

The judgment is affirmed.  The petition is denied.


                                          RYLAARSDAM, ACTING P. J.

WE CONCUR:


MOORE, J.


ARONSON, J.

19