Filed 3/7/16  P. v. Thompson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ISAIAH JERMAINE THOMPSON,<br><br>    Defendant and Appellant. | C079011<br><br>(Super. Ct. Nos. 13F03267,<br>    13F06424) |

A jury found defendant Isaiah Thompson guilty of being a felon in possession of a firearm and resisting a peace officer in the performance of his duties.  He appeals, contending the prosecutor committed misconduct in closing argument by making arguments that shifted the burden of proof and lowered the standard of proof and his counsel's failure to join in his codefendant counsel's objections to the improper argument amounted to ineffective assistance of counsel.  In fact, however, it was *defendant's counsel* -- not his codefendant's counsel -- who objected to the prosecutor's allegedly improper argument, and thus there was no ineffective assistance of counsel for failure to

1

object. In any event, the prosecutor's argument did not amount to misconduct. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of October 2, 2013, Sacramento Police Officer David Putman and his partner, Officer Orlando Morales, were on patrol together in a marked police car and observed a white station wagon speeding. The officers attempted to stop the speeding vehicle, activating lights and siren.

Defendant Isaiah Thompson was the front-seat passenger of the vehicle driven by codefendant Michael Charles Lark. Lark initially slowed down, but failed to stop and then sped off. Officer Morales immediately gave chase while Officer Putman reported the pursuit on the police radio. The high-speed pursuit covered approximately nine miles.

During the chase, both officers observed a firearm fly out of the passenger side of the suspect's vehicle and land on the shoulder of the highway. The pursuit ended with the suspect's vehicle colliding with another vehicle. Defendant fled on foot. Both officers pursued defendant, shouting orders multiple times for defendant to stop and get on the ground. After about 150 to 200 yards of foot pursuit, Officer Morales tackled defendant. Defendant kept his right arm under his body and would not allow it to be handcuffed. After Officer Putman struck defendant in the face about three times, defendant complied and Officer Morales cuffed him.

Defendant was charged with being a felon in possession of a firearm and resisting a peace officer. He was tried along with Lark.

During the prosecutor's closing argument, he explained how both defendant and Lark could possess a single firearm by arguing, "Mr. Thompson threw that firearm out of that car for the mutual benefit of Mr. Lark and himself. They both knew they had a felony and they could not be in possession of a firearm. And that's how the law recognizes situations like this."

2

During closing argument, defendant's attorney addressed the prosecution's claim that the codefendants had a preexisting relationship, and both knew that neither could have a gun. Defendant's counsel argued, "Where is the evidence of that? Where is the evidence that Mr. Lark or Mr. Thompson knew each other at all before October 2nd of 2013?"

Near the end of her argument, defendant's counsel addressed the reasonable doubt standard by reminding the jury of the judge's reading of the CALCRIM No. 220 instruction that defined reasonable doubt as proof that leaves one with the abiding conviction that a charge is true. To illustrate the "abiding conviction" concept she shared a story she heard from one of her colleagues who was approached by a former juror in a grocery store. After a few minutes of "small talk" the juror said, "I just got to know, did he do it?" The attorney was devastated because that juror had voted to convict her client. Defendant's counsel argued that such a question indicated "that juror did not have an abiding conviction that the charge was true."

Later, the prosecutor began his final rebuttal argument. Addressing the contention of defendant's counsel that there was a lack of evidence regarding a prior relationship between the codefendents, the prosecutor argued as follows:

"A lot of the evidence that defense talks about is missing evidence, okay? They are asking you to speculate. We don't know if Mr. Lark and Mr. Thompson knew each other. All right.

"You know what? A piece of paper has the power of a subpoena. Let's serve somebody, let's have them come in here and tell us Mr. Lark and Mr. Thompson don't know each other." Defendant's counsel objected; Lark's counsel did not.

After a sidebar, the court overruled the objection. The prosecutor then added, "That's the failure to call a logical witness, if that is evidence."

Later in his argument, the prosecutor returned to the reasonable doubt standard by offering the following observation and hypothetical:

3

"Nobody likes finding somebody guilty. It's not, you know, an enviable task, but it's important to uphold these laws. So an abiding conviction, that means that you can look back and you know you did the right thing.

"Let's say, another hypothetical, two months from now you are in your front yard, maybe washing the car, and your neighbor comes up to you and says, hey, I know you were on jury duty like two months ago, so your service is over, you are free to talk about it, you are free to discuss it, what was the case about?

"Well, you know, this white sedan was being pulled over for speeding, for some reason it took off. There was no other reason for it to be pulled over but speeding, but it just took off. And on the freeway, through the passenger side came a gun. And then it wrecked, and the driver and the passenger ran. Both had felony convictions, which made it unlawful to possess a firearm, and we found both people guilty.

"Do you think that your neighbor is going to look at you and think what? That sounds insane."

Defendant's counsel objected, citing "improper argument." Again, Lark's counsel did not object. The court dismissed the jury for lunch and then heard from both sides regarding the objection. The court overruled the objection and told defendant's counsel:

"I think, quite frankly, this might be tit for your tat in the sense of your illustration to the jury about your workmate's experience with a juror who comes up [to your workmate] . . . in the grocery store saying, okay, tell me did he or she do it. [¶] . . . [¶] Yours was illustrious. I think this is somewhat in response to that comment. I view this as an attempt to put into working practice this concept of an abiding conviction. That was the point that both of you were stressing at the time that each of you used your respective examples."

After the lunch break, but before the jury returned, the court and counsel met to follow up on both objections and establish a record of the sidebar discussion. The court noted defendant's counsel's first objection on the ground of burden shifting, but

4

overruled it because the prosecutor's comments "made no reference or representation to the jury as to what any other hypothetical witnesses would have said had they been called forward." The court instructed the prosecutor not to give the jury hypothetical evidence of what a hypothetical defense witness might say. The prosecutor agreed, saying that was not his intention. In addition, the court overruled defendant's counsel's objection to the prosecutor's inquisitive neighbor hypothetical, but decided to make a clarifying admonition to the jury upon its return to avoid confusion and reemphasize the CALCRIM No. 220 standard of proof.

After returning from lunch, the court admonished the jury as follows:

"Ladies and gentlemen, right before the lunch hour there was a comment made by our prosecutor that drew an objection by [defendant's counsel]. We had an opportunity to discuss that outside of your presence. I am overruling the objection, but it does, in my opinion, necessitate a quick comment to you.

"And this is what I would tell you: If you recall briefly, the example being used by [the prosecutor] was a hypothetical conversation between yourself and a neighbor in which there was a recount, a summary of some of the evidence, and a position asserted by the People that, based upon that hypothetical conversation, you would be entitled to have confidence in -- in your decision; to wit, it was provided as an example of what it means to have an abiding conviction in the truth of the charge.

"I just want to ensure something, and this is why I'm making this statement to you. The appropriate standard and the only standard you can use in your deliberative process in reaching a decision on guilt or innocence is beyond -- proof beyond a reasonable doubt. And you know, from the instructions just read to you, that is defined for you in [CALCRIM No.] instruction 220.

"I don't want any of you thinking that the standard is actually proof sufficient to satisfy an inquisitive neighbor or proof sufficient to lead a neighbor to believe that your

5

decision is a reasonable one. The only standard you can use is proof beyond a reasonable doubt as defined to you in 220.

"The example, again, may be a very valid one, as the lawyers, and in this case, the DA wants you to understand the concept of having an abiding conviction in the truth of the charge, and that is a component part of the 220 instruction.

"For that purpose that illustration is fine, but I didn't want it to create any confusion on you and lead you astray. Proof beyond a reasonable doubt is your standard. Okay."

The prosecutor then finished his final argument.

The jury found defendant guilty of being a felon in possession of a firearm and delaying a peace officer. The court sentenced defendant to an aggregate term of 11 years and 4 months in prison.

Defendant filed a timely notice of appeal.

DISCUSSION

I

*There Was No Ineffective Assistance Of Counsel*

Defendant complains that his counsel's failure to join in the objections of his codefendant's counsel to the prosecutor's final argument constituted ineffective assistance of counsel. We disagree because it was *defendant's counsel*, *not his codefendant's counsel*, who made timely objections during the prosecutor's final argument. Accordingly, there was no ineffective assistance, and we turn to the question of whether the prosecutor's arguments constituted misconduct.

II

*Prosecutorial Misconduct*

Defendant contends his constitutional right to due process of law was violated by the prosecutor's misconduct during final argument because the prosecutor's improper

6

argument "both lightened the prosecution's burden of proof and required appellant to prove his innocence." We disagree.

The standards used to evaluate prosecutorial misconduct are well established. "A prosecutor's misconduct violates the Fourteenth Amendment to the United States Constitution when it 'infects the trial with such unfairness as to make the conviction a denial of due process.' [Citations.] In other words, the misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' [Citation.] A prosecutor's misconduct that does not render a trial fundamentally unfair nevertheless violates California law if it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1202.) To establish such misconduct "bad faith on the part of the prosecutor is not required." (*People v. Centeno* (2014) 60 Cal.4th 659, 666.)

A defendant's attack on the prosecutor's statements to the jury must show that " '[i]n the context of the whole argument and the instructions,' " there was " 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.' " (*People v. Centeno*, *supra*, 60 Cal.4th at p. 667.)

A

*Comment On Failure To Call Logical Witness Was Not Misconduct*

Defendant argues that the prosecutor's comment that defense counsel could have subpoenaed a witness (to prove the two defendants did not know each other) "improperly shifted the burden onto [defendant]" and "lightened the prosecutor's burden of proving [defendant]'s guilt beyond a reasonable doubt." We disagree.

The Fifth and Fourteenth Amendments to the United States Constitution forbid "comment by the prosecution on the accused's silence." (*Griffin v. California* (1965)

7

380 U.S. 609, 615 [14 L.Ed.2d 106, 110].)  On the other hand, it is not improper for a prosecutor to "comment upon a defendant's failure 'to introduce material evidence or to call logical witnesses.' " (*People v. Wash* (1993) 6 Cal.4th 215, 263.)  A prosecutor commits misconduct, however, "when he purports to tell the jury why a defense witness did not testify or what the testimony of that witness would have been." (*People v. Gaines* (1997) 54 Cal.App.4th 821, 822.)

Here, the prosecutor did not commit misconduct because his comment did not cross the line into improper speculation as to why a "logical witness" was not called, or what the hypothetical witness would have said.  During the postobjection sidebar, the prosecutor explained that his intention was not to speculate, but merely to address the missing logical witness.  He also agreed with the court's instruction not to enter into speculation.

We conclude the prosecutor did not commit misconduct because the prosecutor did not speculate or represent to the jury what a hypothetical witness would have said had he or she been called.  His comment did not shift the burden of proof, but instead was a permitted reference to the state of the evidence and the failure of the defense to call a logical witness.

B

*Inquisitive Neighbor Hypothetical Was Not Misconduct*

Defendant contends the prosecutor's inquisitive neighbor hypothetical "improperly urged the jury to apply a lower standard of proof."  He further contends that "[g]iven the difficulty of the [beyond a reasonable doubt] concept, one or more jurors could have easily followed the prosecutor's erroneous argument."  We disagree.

 "When the claim focuses on the prosecutor's comments to the jury, we determine whether there was a reasonable likelihood that the jury construed or applied any of the remarks in an objectionable fashion." (*People v. Booker* (2011) 51 Cal.4th 141, 184-185.)

8

Our Supreme Court has noted that "[t]he case law is replete with innovative but ill-fated attempts to explain the reasonable doubt standard. [Citations.] We have recognized the 'difficulty and peril inherent in such a task,' and have discouraged such 'experiments' by courts and prosecutors. [Citation.] We have stopped short, however, of categorically disapproving the use of reasonable doubt analogies or diagrams in argument. Rather we assess each claim of error on a case-by-case basis." (*People v. Centeno*, *supra*, 60 Cal.4th at p. 667.)

In addressing the issues raised by defense counsel, the trial court recognized that *both* the prosecutor and defendant's counsel used examples in their respective closing arguments to explain the concept of an "abiding conviction," which is a component part of the CALCRIM No. 220 instruction.[1]

First, defendant's counsel relayed the story of a colleague speaking to a former juror in the grocery store. The juror's lack of an "abiding conviction" was revealed by her query, "I just got to know, did he do it?" Defendant's counsel's argument was that to have an "abiding conviction that the charge was true" meant to have a conviction that would remain over time and not evaporate into a nagging doubt like that which prompted the juror's question.

Later, during final argument, the prosecutor illustrated the "abiding conviction" concept through the use of a hypothetical that asked members of the jury to imagine themselves talking to a neighbor two months later. When the inquisitive neighbor asked about the juror's duty and what the case was about, the juror reported the attempted traffic stop, high speed chase, thrown gun, car wreck, fleeing defendants, and the jury's

---

[1] CALCRIM No. 220 provides in relevant part, "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt."

guilty verdict of illegal possession of a firearm. The prosecutor then said, "[d]o you think your neighbor is going to look at you and think what? That sounds insane."

Defense counsel objected, citing "improper argument." The trial court perceived the prosecution's hypothetical as a response to defendant's counsel's story and viewed the issue from the perspective that both sides had "attempt[ed] to put into working practice this concept of an abiding conviction. That was the point that both of you were stressing at the time that each of you used your respective examples."

We agree with the trial court. Both sides were attempting to remind the jury that verdicts based on the CALCRIM No. 220 reasonable doubt standard should provide each juror with an "abiding conviction" that will not evaporate in the ensuing weeks, months, or years. The prosecutor's story highlighted a juror's lack of abiding conviction, while defendant's counsel's hypothetical focused on how an abiding conviction would endure over time and affect the confidence with which a former juror reported on the case to others.

Defendant's contention that the prosecutor's hypothetical confused the jury by introducing a lower standard of proof is without merit. The trial court found that neither side expressed, or implied, that a lower standard of proof be adopted, and we agree with that assessment.

We acknowledge that illustrations are imperfect vessels for the transfer of concepts and ideas. If pushed too far, every illustration breaks down or proves too much. This is especially true when illustrating challenging concepts, such as the reasonable doubt standard. However, we conclude that no such distortion was advanced by the advocates in this case. As such, there was no reasonable likelihood that the jury would construe or apply the prosecutor's hypothetical in an objectionable way.

Therefore, the prosecutor's inquisitive neighbor hypothetical was neither deceptive nor reprehensible, and thus its use did not constitute misconduct.

10

DISPOSITION

The judgment is affirmed.

/s/
Robie, Acting P. J.

We concur:

/s/
Butz, J.

/s/
Duarte, J.

11