Filed 2/9/15  P. v. Davidson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>RICHARD CARLTON DAVIDSON,<br><br>   Defendant and Appellant. | H037751<br>(San Benito County<br>Super. Ct. No. CR-10-00879) |

Defendant Richard Carlton Davidson was convicted by jury trial of child abuse (Pen. Code, § 273a, subd. (a); count 1),[1] two counts of aggravated assault (former § 245, subd. (a)(1); counts 2 & 3),[2] and two counts of misdemeanor vandalism (§ 594, subd. (a); counts 6 & 7).  On appeal, defendant argues:  (1) insufficient evidence supports his conviction for felony child abuse, (2) the trial court failed to instruct the jury that defendant's knowledge of the victim's age is a necessary element of child abuse, (3) the trial court failed to instruct the jury on the lesser included offenses of misdemeanor child abuse and simple assault, (4) a pervasive pattern of prosecutorial misconduct warrants reversal of his convictions, (5) cumulative error requires reversal of his convictions, (6)

---

[1] Further unspecified statutory references are to the Penal Code.

[2] "Effective January 1, 2012 former subdivision (a)(1) of section 245 was divided into two separate and distinct subdivisions:  section 245, subdivision (a)(1), now prohibits assault with a deadly weapon or instrument other than a firearm, and new subdivision (a)(4) prohibits assault by means of force likely to produce great bodily injury.  (Stats. 2011, ch. 183, § 1.)"  (*People v. Brown* (2012) 210 Cal.App.4th 1, 5, fn. 1.)

his sentence for one of his convictions for misdemeanor vandalism was statutorily unauthorized, (7) his two assault convictions were based on alternate legal theories and therefore one conviction must be vacated, (8) one of his sentences for misdemeanor vandalism must be stayed pursuant to section 654, (9) the court erred in calculating his restitution and parole revocation fines, and (10) he is entitled to additional conduct credit.

For the reasons set forth below, we reverse the judgment. On remand, the trial court is directed to resentence defendant for his conviction for misdemeanor vandalism (count 6), vacate his conviction for assault with force likely to produce great bodily injury (count 3), stay his sentence for misdemeanor vandalism (count 7), recalculate the restitution and parole revocation fine, and award defendant a total of 202 days conduct credit.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Complaint*

On May 20, 2010, the San Benito County District Attorney's office filed a complaint charging defendant with a count of felony child abuse of Amber V. (§ 273a, subd. (a); count 1), two counts of felony aggravated assault of Amber V. (former § 245, subd. (a)(1); counts 2 & 3), two counts of felony aggravated assault of Shawn Little (former § 245, subd. (a)(1); counts 4 & 5), a count of felony vandalism of Little's truck (§ 594, subd. (a); count 6), and a count of misdemeanor vandalism of Vanessa Valdez's car (*ibid.*; count 7). The complaint also alleged defendant had served three prior prison terms (§ 667.5, subd. (b)) and had suffered two prior strike convictions (§§ 667, subds. (b)-(i)).

Trial began on July 11, 2011. On July 12, 2011, the trial court reduced count 6 to a misdemeanor.

2

*The Prosecution's Evidence*

### Amber V.'s Testimony

Amber V. testified at defendant's trial. Amber V., 15 years old at the time, was friends with Valdez, who lived in a trailer with Little. On February 22, 2010, Valdez and Amber V. were sitting inside Valdez's car, which was parked in front of Little's trailer. Defendant drove up to the trailer in a white Ford Expedition, exited his car, and began smashing Little's truck, which was parked near the trailer, with a metal bat while yelling.

Amber V. and Valdez locked the doors of the car they were in. Defendant walked over, made eye contact with Amber V., and said: "Do you want some of this, too, bitch?" Defendant then struck the passenger side car window where Amber V. was sitting with the bat, shattering the glass on impact. Amber V. moved to avoid being hit and said she believed if she had not moved the bat would have struck her face. The bat touched her shoulder but did not cause her injury. She sustained cuts on her face from the shattered glass. Amber V. said she did not know defendant before the incident.

Amber V. testified that after a while, Little came out of the trailer and yelled at defendant. Defendant then proceeded to chase Little around while swinging the bat. Little avoided being hit. Defendant returned to his car and drove away shortly after. Amber V. said the entire incident took place over the course of approximately two minutes, with the attack on Valdez's car lasting around five seconds. A neighbor called the police.

### Officer Vining's Testimony

Hollister Police Department Officer Steven Vining arrived at Little's trailer shortly after defendant left. Vining took photographs of the scene and of Amber V.'s facial injuries and conducted interviews with Amber V., Valdez, and Little. Amber V. told Vining that the bat had not struck her. At trial, Amber V. asserted she did not tell Vining the bat touched her shoulder because it had not injured her, and she was more concerned

3

about the cuts on her face. Vining testified he did not recall Amber V. telling him that defendant had chased Little with the bat.

That same day, Officer Vining drove to a house where defendant was reportedly living. No one answered the door, and Vining did not see defendant's car nearby. Vining drove to defendant's workplace but did not find defendant or his car there. A day later, Vining returned to defendant's house and saw defendant standing outside next to a Ford Expedition. Defendant explained that he used to live in Little's trailer but had moved out because Little was a "tweaker," which Vining understood meant he used methamphetamine. Defendant denied being at Little's trailer the previous day and denied vandalizing any property or assaulting anyone. Vining looked into defendant's car and did not see a bat.

Officer Vining took an older booking photograph of defendant and created a six-photo lineup, which he presented to Amber V. after giving her an admonishment. Amber V. identified defendant from the lineup.

*The Defense's Evidence*

Defendant testified on his own behalf. He denied any wrongdoing and insisted he was home at the time of the incident.

Defendant said he had lived at Little's trailer for a month and a half but had moved out because there were drugs. He denied ever using drugs at the trailer. Defendant may have met Valdez at some point but did not know Amber V.

Defendant acknowledged he had previous convictions for dissuading a witness and being a felon in possession of a firearm.

*Verdict and Sentencing*

On July 14, 2011, the jury returned guilty verdicts on count 1 (felony child abuse), count 2 (aggravated assault of Amber V.), count 3 (aggravated assault of Amber V.), count 6 (misdemeanor vandalism of Little's truck), and count 7 (misdemeanor vandalism

4

of Valdez's car), and a not guilty verdict on counts 4 and 5 (aggravated assault of Little). The trial court found true the allegations that defendant had suffered two prior strike convictions (§ 667, subds. (b)-(i)) and served three prior prison terms (§ 667.5, subd. (b)) after a bifurcated bench trial.

On December 9, 2011, the court sentenced defendant to a term in prison of 25 years to life plus 13 years each for counts 1, 2, and 3. The sentences for counts 2 and 3 were stayed pursuant to section 654. The court also imposed a term of 25 years to life plus 13 years for count 6 (misdemeanor vandalism), to be served consecutively to the term imposed on count 1. For count 7, the court imposed a term of one year in county jail to be served concurrently with defendant's aggregate indeterminate term of 50 years to life plus a determinate term of 26 years.

Defendant was awarded 486 days of presentence credit consisting of 405 actual days and 81 days conduct credit. The court also imposed various fines and fees, including an $800 restitution fine pursuant to section 1202.4, subdivision (b), with a matching $800 parole revocation fine (§ 1202.45) that was imposed but suspended.[3] Defendant appealed.

## DISCUSSION

1. *Sufficiency of Evidence for Felony Child Abuse Conviction*

First, defendant challenges the sufficiency of the evidence supporting his conviction for felony child abuse (§ 273a, subd. (a)). Specifically, he claims there was insufficient evidence he knew Amber V. was a child.

---

[3] During the sentencing hearing, the court stated: "There will be a restitution fine of two hundred dollars for Count 1, 6, four hundred dollars total, with an additional parole revocation of four hundred dollars . . . The Counts 2 and 3, those which I have stayed, there would be a two hundred dollar restitution fee for each of those, and a parole revocation restitution fine of two hundred dollars each." This amounts to a total restitution fine of $800 and a total parole revocation fine of $800.

"In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we 'examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--evidence that is reasonable, credible and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . ." (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129; see also *People v. Meza* (1995) 38 Cal.App.4th 1741, 1745.)

Section 273a, subdivision (a) provides: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished . . . ."

Defendant reads a knowledge element into section 273a, subdivision (a). He argues that in order for his conviction to stand, there must be sufficient evidence he *knew* Amber V. was a child. We disagree.

Defendant acknowledges there is no case law construing a knowledge element into section 273a, subdivision (a). Therefore, we must determine whether the statute should be interpreted as requiring, as an element of the offense, that a defendant know his victim is a child.

The rules of statutory interpretation are well-settled. "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] We begin by examining the statutory language, giving the words their usual and ordinary meaning." (*Day v. City of Fontana* (2001) 25 Cal.4th

6

268, 272.) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters)." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) "If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day v. City of Fontana*, *supra*, at p. 272.)

We find no ambiguity inherent in the statute. Given the plain language of section 273a, in order for a defendant to be convicted of the crime of child abuse it must be established that the victim was in fact a *child*. Therefore, the victim's age is an element of the crime that must be proven by the prosecution. However, defendant's argument that the prosecution must also prove an additional element--that the perpetrator of the abuse knew the victim's age--is unavailing. There is no language in the statute that suggests this is an element of the offense.

Indeed, if the Legislature had intended for a defendant's knowledge of the victim's age to be a required element, it would have included such wording in the statute. For example, section 368, the statute that criminalizes elder abuse, was modeled after section 273a. In pertinent part, it states that "[a]ny person *who knows or reasonably should know that a person is an elder or dependent adult* and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering . . ." shall be punished. (§ 368, subd. (b)(1), italics added.)[4] Accordingly, a defendant's knowledge of the victim's age is an essential element of the offense of elder

---

[4] When drafting the legislation enacting section 368, the author "lifted the language of the child abuse statutes in its entirety, replacing the word 'child' with 'dependent adult' throughout." (*People v. Heitzman* (1994) 9 Cal.4th 189, 202-203.)

7

abuse, as expressly stated in section 368. This language is conspicuously absent from section 273a.

"Because the wording of these statutes shows the Legislature, if it wishes, knows how to express its intent that knowledge be an element of an offense, the absence of such a requirement . . . indicates it intended no such requirement. [Citation.] 'It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.' " (*In re Jennings* (2004) 34 Cal.4th 254, 273.) Here, the language of section 368 tracks that of section 273a. By adding a knowledge requirement to section 368, it seems the Legislature impliedly acknowledged the lack of a similar requirement in section 273a. Otherwise, the addition of the knowledge element to section 368 would have been superfluous and unneeded.

Nonetheless, defendant insists the statute's declaration that a defendant must "willfully" cause harm to a child should be construed as a requirement that the defendant know the victim's age.[5]

Defendant notes that in *People v. Valdez* (2002) 27 Cal.4th 778, our Supreme Court stated that the "mens rea for the crime [of child abuse] was the intent to perform the underlying injurious act *on a child*." (*Id*. at p. 786, italics added.) *Valdez*, however, did not consider whether "willfully" imparted a requirement that a defendant know his victim's age. *Valdez* discussed the appropriate mens rea needed for a defendant to be convicted of indirect infliction of harm on a child in violation of section 273a. "[I]t is

---

[5] Section 7, subdivision 1, states in pertinent part: "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage."

8

axiomatic that cases are not authority for propositions not considered." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176.) Defendant's reliance on *Valdez* is unavailing.

Defendant is correct that "the meaning of the term 'willfully' varies depending on the statutory context." (*People v. Garcia* (2001) 25 Cal.4th 744, 753 (*Garcia*).) Certainly, in criminal statutes involving a *failure* to act--such as a violation of section 290 for failing to register as a sex offender--our Supreme Court has interpreted the term to require the defendant actually know of the duty to act. (*Garcia*, *supra*, at pp. 752-754.) This is because in the context of a defendant's failure to register, one cannot logically "purposefully fail to perform an act without knowing what act is required to be performed." (*Id.* at p. 752.) However, the *Garcia* court's interpretation of "willfully" is readily distinguishable, because section 273a does not criminalize a failure to act in a certain manner. Therefore, we reject defendant's claim that "willfully" in this context imparts a knowledge requirement.[6]

Indeed, we find that the term "willfully" in section 273a does not mandate the prosecution prove knowledge of the victim's age; it requires the prosecution prove the defendant acted with the requisite criminal intent.

Section 273a is not a strict liability offense, and the criminal intent needed to support a conviction under section 273a is established. Section 273a, subdivision (a) " 'is an omnibus statute that proscribes essentially four branches of conduct.' [Citation.] These four branches or prongs are: ' "Any person who, under circumstances or conditions likely to produce great bodily harm or death, [1] willfully causes or permits any child to suffer, or [2] inflicts thereon unjustifiable physical pain or mental suffering,

---

[6] Furthermore, we do not find that "willfully" should be read to apply a knowledge requirement to all elements of the crime. Our Supreme Court has already held in *People v. Sargent* (1999) 19 Cal.4th 1206, 1221, that "[s]ection 273a does not provide that a defendant must 'know or reasonably should know that his or her actions occur under circumstances or conditions likely to produce great bodily harm or death.' "

9

or [3] having the care or custody of any child, willfully causes or permits the person or health of that child to be injured, or [4] willfully causes or permits that child to be placed in a situation where his or her person or health is endangered . . . .” ’ ” (*In re L.K.* (2011) 199 Cal.App.4th 1438, 1444-1445.)

The second category of offenses has been described by our Supreme Court as “direct infliction,” whereas the first, third, and fourth categories are “indirect infliction.” (*People v. Valdez*, *supra*, 27 Cal.4th at p. 786.) For a “direct infliction” offense, a defendant must possess a “general criminal intent, similar to battery or assault with a deadly weapon.” (*In re L.K.*, *supra*, 199 Cal.App.4th at p. 1445.) The intent for the other three categories of “indirect infliction” offenses is criminal negligence. (*Ibid*.) Therefore, “willfully” in this context is best understood as requiring a defendant possess either a general criminal intent or criminal negligence.

We note that our conclusion that section 273a does not require the prosecution to prove knowledge of age is consistent with other criminal statutes involving minors. (See *People v. Zeihm* (1974) 40 Cal.App.3d 1085, 1089 [concluding that “belief as to age is a matter of defense and is not a part of the prosecution’s burden of proof” for crime of unlawful sexual intercourse with a minor (§ 261.5)], disapproved of on other grounds in *People v. Freeman* (1988) 46 Cal.3d 419, 428, fn. 6; *In re Jennings*, *supra*, 34 Cal.4th at pp. 260, 276, 279-280 [mistake of age defense may be raised by defendant, but prosecution need not prove knowledge of age to establish offense of purchasing alcohol for persons under the age of 21].) Furthermore, this interpretation is also consistent with the statute’s purpose to protect children, who are “ ‘members of a vulnerable class,’ ” from situations where serious injury or death is likely to occur. (*People v. Toney* (1999) 76 Cal.App.4th 618, 622.)

In sum, defendant’s offense is best characterized as a “direct infliction” offense under the statute, and he does not argue there is insufficient evidence he possessed a

10

general criminal intent. He merely insists the prosecution failed to present evidence he knew Amber V. was a minor. Since we determine a defendant's knowledge of the victim's age is not a required element of a violation of section 273a, we find sufficient evidence supports his conviction on this count.

2. *Failure to Instruct on Knowledge of Age as an Element of Section 273a*

Defendant argues the court erred by failing to instruct the jury that a defendant's knowledge of the victim's age is a necessary element of section 273a. A court is required to provide instructions on every material element of an offense. (*People v. Flood* (1998) 18 Cal.4th 470, 480.) However, based on our conclusion that a defendant's knowledge of the victim's age is not an element of section 273a, the court did not err by not instructing the jury on this matter.

3. *Failure to Instruct on Lesser Included Offenses of Misdemeanor Child Abuse and Simple Assault*

Next, defendant insists the trial court was required to instruct the jury on the lesser included offenses of misdemeanor child abuse and simple assault.

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged. [Citations.] The obligation to instruct on lesser included offenses exists when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given. [Citations.] Just as the People have no legitimate interest in obtaining a

11

conviction of a greater offense than that established by the evidence, a defendant has no right to an acquittal when that evidence is sufficient to establish a lesser included offense.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155.)

Therefore, "[a] trial court must instruct on a lesser included offense if substantial evidence exists indicating that the defendant is guilty only of the lesser offense." (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.) "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*People v. Breverman*, *supra*, 19 Cal.4th at p. 177.) On appeal, we apply a de novo standard of review and independently determine whether the court erred in failing to instruct on a lesser included offense. (*Ibid*.) Failure to instruct requires reversal only if we conclude that it is reasonably probable the erroneous instruction affected the outcome. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

**Misdemeanor Child Abuse**

Preliminarily, we note that "[m]isdemeanor child abuse (§ 273a, subd. (b)), is a lesser included offense of felony child abuse (§ 273a, subd. (a))." (*People v. Moussabeck* (2007) 157 Cal.App.4th 975, 980.) The difference between misdemeanor child abuse and felony child abuse is whether the abuse was committed "under circumstances or conditions likely to produce great bodily injury or death." (*Ibid*.) Accordingly, at issue here is whether there was substantial evidence from which a jury could have found defendant committed child abuse under circumstances or conditions that were *not* likely to produce great bodily injury or death and therefore committed misdemeanor child abuse, not felony child abuse. In the absence of such evidence, the court did not err by not instructing on the lesser included offense of misdemeanor child abuse. (*People v. Blair* (2005) 36 Cal.4th 686, 744-745, overruled on a different point in *People v. Black* (2014) 58 Cal.4th 912.)

12

Defendant insists *People v. Racy* (2007) 148 Cal.App.4th 1327 (*Racy*) is instructive. The *Racy* defendant appealed his conviction of felony elder abuse in violation of section 368, subdivision (b)(1), arguing in part that the trial court erred in failing to instruct on the lesser included offense of misdemeanor elder abuse (§ 368, subd. (c)). (*Racy*, *supra*, at p. 1330.) The *Racy* defendant " 'zapped' " the 74-year-old victim with a stun gun, which the victim described as pain similar to a " 'poke' " from an ice pick. (*Id*. at pp. 1330-1331.) The victim was able to retreat to his bedroom where he tried to lock the door, but the defendant followed so closely behind that the victim was unable to do so. However, the victim was able to get in a defensive position on the bed. The defendant asked the victim for money, " 'zapped' " the stun gun " 'in the air' " and tipped the victim over, exposing his wallet. The victim struggled with the defendant, but the defendant was able to take the wallet. The victim tripped at some point, and the defendant ran out of the house. The victim called the police but did not seek medical attention because there was no evidence of burns or other injuries to his leg. (*Id*. at p. 1331.)

The appellate court concluded the trial court should have instructed the jury on the lesser included offense of misdemeanor elder abuse. (*Racy*, *supra*, 148 Cal.App.4th at pp. 1335-1336.) The court noted the victim "did not suffer great bodily harm during the incident, so the jury was left to draw inferences about whether the circumstances or conditions under which defendant inflicted physical pain or mental suffering were likely to produce great bodily harm or death." (*Id*. at p. 1335.) Furthermore, the court opined that "it is reasonable the jury could have viewed [the victim] as a rather large man who was not likely to suffer great bodily injury or death during the incident despite his age and physical limitations." (*Id*. at p. 1336.) Additionally, the victim, despite being zapped with the stun gun, was able to retreat to his room, call 911, and get in a defensive position on the bed. He emerged "unscathed after being tipped and tripped." (*Ibid*.) Therefore,

13

the court concluded that based on this evidence there was a " 'reasonable chance' defendant 'would have obtained a more favorable outcome' had the jury been instructed on misdemeanor elder abuse." (*Ibid.*)

We find *Racy* distinguishable. The *Racy* defendant used a stun gun, "tripped," and "tipped" the victim, conditions that were not necessarily likely to cause great bodily injury or death to the elder victim. Here, defendant swung a bat at Valdez's passenger car window where Amber V. was sitting with enough force that the glass shattered. The only reasonable finding a jury could have made if it concluded defendant was responsible for the crime was that the offense was committed under circumstances or conditions likely to produce great bodily harm or death. It is well-settled that "instructions on lesser included offenses are not required when the evidence shows that, if guilty at all, [the] defendant committed the greater crime." (*People v. Lema* (1987) 188 Cal.App.3d 1541, 1545.)

Additionally, it is not dispositive that Amber V. did not sustain more serious injuries during the incident aside from the cuts on her face from the shattered window. The issue is whether defendant's act of hitting the car window is a condition likely to produce great bodily injury. The fact that defendant's actions did not actually *cause* great bodily injury does not necessarily warrant instruction on the lesser included offense.

*People v. Rupert* (1971) 20 Cal.App.3d 961, cited by defendant, does not dictate a different result. The *Rupert* court concluded the trial court erred when it failed to instruct on the lesser included offense of simple assault after the defendant was convicted of assault with force likely to produce great bodily injury. (*Id.* at pp. 968-969.) The court recognized an instruction on a lesser included offense is only necessary when "the evidence would support such a determination." (*Id.* at p. 968.) In contrast, there is no such evidence here.

14

*People v. Roman* (1967) 256 Cal.App.2d 656, also relied on by defendant, is similarly distinguishable. The *Roman* defendant argued on appeal that the trial court erred in failing to instruct the jury on the misdemeanor provision of section 273a. (*People v. Roman*, *supra*, at p. 661.) The evidence established the child "had blood around its nostrils, red marks on its face, neck, back, legs, and arms, discoloration on one arm, apparently as the result of blows, but that it had not sustained any serious injury requiring medical treatment." (*Ibid.*) The defendant testified he had spanked the child with a belt but had not struck the child on the head or face and had not seen any marks on the child after the spanking. (*Ibid.*) The appellate court concluded a jury could have found the beating was one likely to produce great bodily harm or could have accepted the defendant's testimony and determined it was a beating under any other circumstance and therefore only a misdemeanor. (*Ibid.*) The court noted the defendant's testimony "raised the issue of the severity of the beating, and the jury should have passed on that issue." (*Id.* at p. 662.)

Defendant claims *Roman* is analogous, because Amber V.'s testimony cast doubt on the amount of force used by defendant since she asserted the bat merely touched her shoulder and did not cause her injury. Defendant is incorrect. This testimony does not cast doubt on the amount of *force* used by defendant. Rather, it concerns the extent of injuries suffered by Amber V. as a result of the attack. There was no conflicting testimony about the severity of the force used by defendant when he swung the bat. The only evidence presented was that defendant was forceful enough to shatter the car window. This action unequivocally placed Amber V. in a condition likely to produce great bodily harm or injury. Amber V.'s testimony does not warrant an instruction on a lesser included offense. Therefore, the trial court did not err.

15

**Simple Assault**

Defendant also argues the court erred when it failed to sua sponte instruct the jury of simple assault (§ 240), which is a lesser included offense of aggravated assault (former § 245, subd. (a)(1)). (See *People v. McDaniel* (2008) 159 Cal.App.4th 736, 747.)

All of the elements of simple assault are included in the offense of aggravated assault. However, unlike simple assault, aggravated assault is committed when a defendant assaults a victim using a deadly weapon (former § 245, subd. (a)(1)) or if the defendant assaults a victim "by means of force likely to produce great bodily injury" (*ibid.*). If the weapon used is not inherently deadly, it must be found the defendant used the weapon in such a way as to be capable of and likely to produce great bodily injury or death. (*In re Brandon T.* (2011) 191 Cal.App.4th 1491, 1496.)

As we previously discussed, "instructions on lesser included offenses are not required when the evidence shows that, if guilty at all, [the] defendant committed the greater crime." (*People v. Lema*, *supra*, 188 Cal.App.3d at p. 1545.) Here, if defendant was guilty of the assault, he was necessarily guilty of assault with a deadly weapon in violation of former section 245, subdivision (a)(1). A bat is not an inherently deadly weapon within the meaning of the statute. However, defendant swung the bat at the car with enough force to shatter the window. Based on the evidence, the bat was used in such a way that no reasonable jury could have concluded it was not a deadly weapon and was not capable of or likely to produce great bodily injury or death.

Additionally, defendant was necessarily guilty of aggravated assault on the alternate theory that the assault was committed with force likely to produce great bodily injury. "Section 245 'prohibits an assault by means of force *likely* to produce great bodily injury, not the use of force which does in fact produce such injury. While . . . the results of an assault are often highly probative of the amount of force used, they cannot be conclusive.' [Citation.] . . . ' "The issue, therefore, is not whether serious injury was

16

caused, but whether the force used was such as would be likely to cause it." ' [Citation.] The focus is on the force actually exerted by the defendant, not the amount of force that could have been used." (*People v. McDaniel*, *supra*, 159 Cal.App.4th at p. 748.) A jury could not have reasonably concluded that defendant's actions were not likely to cause great bodily injury. The same reasoning set forth in our prior section discussing the trial court's alleged failure to instruct on the lesser included offense of misdemeanor child abuse is applicable here.

Accordingly, we conclude the court did not err in failing to instruct on simple assault.

4. *Prosecutorial Misconduct*

Next, defendant argues his convictions must be reversed, because a pervasive pattern of prosecutorial misconduct undermined the fairness of his trial. We address each category of challenged statements separately.

**Forfeiture**

Preliminarily, the People insist defendant forfeited his claims of prosecutorial misconduct, because he failed to object to the statements at trial.[7] Defendant insists the record reflects any objection would have been futile. Regardless, even if we assume defendant forfeited his claims, we must reach the merits of his arguments, because he alternatively argues his trial counsel rendered ineffective assistance for failing to object to the alleged misconduct. We therefore address the substance of his claims.

---

[7] Typically, " '[t]o preserve for appeal a claim of prosecutorial misconduct, the defense must make a timely objection at trial and request an admonition; otherwise, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct.' " (*People v. Silva* (2001) 25 Cal.4th 345, 373.)

17

**Overview of Ineffective Assistance of Counsel Claims**

In order to establish his trial counsel was ineffective, defendant must show his counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and his counsel's deficient representation subjected him to prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) Prejudice in this context means that but for his counsel's deficiencies, the result of the proceedings would have been favorable to the defendant. (*Ibid.*) A reasonable probability is one that is sufficient to undermine confidence in the verdict. (*Id.* at p. 694.)

"We presume that counsel rendered adequate assistance and exercised reasonable professional judgment in making significant trial decisions." (*People v. Holt* (1997) 15 Cal.4th 619, 703.) Therefore, we reverse " 'only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.' " (*People v. Zapien* (1993) 4 Cal.4th 929, 980.) We may dispose of an ineffectiveness claim if defendant fails to demonstrate prejudice without determining whether his trial counsel's performance was deficient. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 697.)

We review each category of statements to determine if there was misconduct amounting to reversible error. In the absence of such misconduct, defendant's ineffective assistance of counsel claim would fail for lack of prejudice.

**Legal Principles Governing Prosecutorial Misconduct Claims**

Misconduct involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. (*People v. Haskett* (1982) 30 Cal.3d 841, 866.) It is misconduct for a prosecutor to mischaracterize the evidence (*People v. Hill* (1998) 17 Cal.4th 800, 823), misstate the law (*People v. Bell* (1989) 49 Cal.3d 502, 538 (*Bell*)), or appeal to the passion of the jurors (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1250).

"[A] prosecutor commits reversible misconduct if he or she makes use of 'deceptive or reprehensible methods' when attempting to persuade either the trial court or

18

the jury, and when it is reasonably probable that without such misconduct, an outcome more favorable to the defendant would have resulted.  [Citation.]  Under the federal Constitution, conduct by a prosecutor that does not result in the denial of the defendant's specific constitutional rights--such as a comment upon the defendant's invocation of the right to remain silent--but is otherwise worthy of condemnation, is not a constitutional violation unless the challenged action '"so infected the trial with unfairness as to make the resulting conviction a denial of due process."'" (*People v. Rundle* (2008) 43 Cal.4th 76, 157, disapproved on a different ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  Reversal is required "only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*People v. Breverman*, *supra*, 19 Cal.4th at p. 178.)

"When, as here, the claim focuses on comments made by the prosecutor before the jury, a court must determine at the threshold how the remarks would, or could, have been understood by a reasonable juror.  [Citations.]  If the remarks would have been taken by a juror to state or imply nothing harmful, they obviously cannot be deemed objectionable." (*People v. Benson* (1990) 52 Cal.3d 754, 793.)

**Disparagement of Defense Counsel**

First, defendant claims the prosecutor committed misconduct by disparaging defense counsel.  We disagree.

During closing argument, in reference to a diagram drawn by Amber V. during cross-examination, the prosecutor made the following statement:  "The way she draws it, the car's right up against the house. . . .  It doesn't make sense.  Look at the drawing.  Very skillful manipulation.  And that's [defense counsel's] job, to confuse you. [¶] He does his job if he confuses just one of you enough so that you can't make a decision in this case.  I was a defense attorney for many years; I know what the job is about. . . . [¶] .

19

. . [¶] . . . Again, he tried to confuse [Amber V.]." Additionally, when addressing the testimony of Officer Vining, the prosecutor made another statement about the defense counsel, reiterating: "[D]on't let [defense counsel] confuse the facts. Don't let him. I told you I used to be a defense attorney and I know what you do in a case like this."

On rebuttal, the following colloquy ensued: "[PROSECUTOR]: And let me tell you something else. I was a defense attorney. Now I'm working for the State of California. I'm doing justice. I'm not getting paid very good money to defend convicted felons. [¶] [DEFENSE COUNSEL]: Your Honor, I'm going to object to that statement. [¶] [THE COURT]: It's noted. Keep in mind, first of all, Ladies and Gentlemen, what the attorneys say is not evidence. It's just their view of the case. You can go back to your view of the case, though, please. [¶] [PROSECUTOR]: Thank you, Your Honor. I'm just saying that in response to the comment that I'm doing defense now and I used to be a prosecutor, there's the contrast. Like the truth hurts Mr. Davidson, but the fact is, I have no axe to grind in this action. My job is to do justice. Not to win, not to confuse just one of you so that my client can walk. . . . [¶] I elicited the truth from the witnesses. . . . He [defendant's attorney] confused the witnesses, because that's his job. And I know you guys noticed this, too. He tried to confuse you right now. Did you hear some of the stuff that he said? Some of the leaps in logic that he drew in trying to argue to you his case? [¶] . . . [¶] . . . He's [defense counsel] being disingenuous right off the bat. Again, he is a good attorney and he's doing his job, but he's doing that and it's obvious."

In general, a prosecutor cannot attack defense counsel's integrity or cast aspersions on defense counsel. (*People v. Hill*, *supra*, 17 Cal.4th at p. 832.) However, " ' " 'a prosecutor is given wide latitude during argument. The argument may be vigorous as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom. [Citations.] . . .' . . . 'A prosecutor may "vigorously argue his case and is not limited to 'Chesterfieldian politeness' " [citation],

20

and he may "use appropriate epithets . . . ." ' " ' " (*Id*. at p. 819.) Thus, a prosecutor may give his or her opinion on the state of the evidence and focus on deficiencies in defense counsel's tactics and factual account. (*People v. Redd* (2010) 48 Cal.4th 691, 735; see also *People v. Wharton* (1991) 53 Cal.3d 522, 567.)

Contrary to defendant's claims, we find the challenged statements do not amount to an improper attack on defense counsel's character. Rather, the prosecutor was denigrating defense counsel's choice of tactics. While his words may have been poorly chosen, the prosecutor did nothing more than reiterate to the jury that it should not be confused or swayed by the defense's arguments, which courts have consistently found to be appropriate. (See, e.g., *People v. Taylor* (2001) 26 Cal.4th 1155, 1166-1167 [finding no misconduct when prosecutor made comments referring to defense "tricks" or "moves" to demonstrate a witness' confusion or credibility]; *People v. Goldberg* (1984) 161 Cal.App.3d 170, 190 [no misconduct where prosecutor told jurors that defense counsel was " 'trying to get you confused about what some of the issues are' " and was " 'trying to sidetrack you' "]; *People v. Medina* (1995) 11 Cal.4th 694, 759 [comments that " 'any experienced defense attorney can twist a little, poke a little, try to draw some speculation' " was not a personal attack on defense attorney's credibility and was not misconduct].)

We also find the prosecutor did not commit misconduct when he asserted defense counsel was being "disingenuous" during rebuttal. Typically, statements where the prosecutor "characterized defense counsel as 'liars' or accused counsel of lying to the jury" are impermissible. (*People v. Young* (2005) 34 Cal.4th 1149, 1193.) However, if the prosecutor's statements were a response to a statement made by defense counsel, we must "view the prosecutor's comment in relation to the remarks of defense counsel, and inquire whether the former constitutes a fair response to the latter." (*People v. Frye* (1998) 18 Cal.4th 894, 978, disapproved of on a different ground in *People v. Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22.)

21

The prosecutor commented that defense counsel was being disingenuous in response to defense counsel's earlier statement that he had taken on defendant's case because he thought it was fundamentally unfair. Defendant's counsel had stated that he had read the charging document and had seen there were three alleged victims. Defendant's counsel then explained that although neither side is required to call all witnesses, he wanted to remind the jury that two of the alleged victims did not testify in this case. In response, the prosecutor stated defense counsel was being "disingenuous" for insinuating he knew the prosecution was not going to call all three alleged victims to testify when he read the charging document. Therefore, the crux of the prosecutor's argument was not that defense counsel was lying or fabricating evidence but was that defense counsel lacked evidentiary support for his earlier assertion. Reading this statement in context, it was a fair comment on defense counsel's statements and was not misconduct.

**Disparagement of Defense Bar**

Defendant also contends the prosecutor made persistent unfavorable generalizations about the defense bar. We find the prosecutor may have arguably committed misconduct based on his statements.

In this case, during closing argument the prosecutor commented: "My job as the Deputy District Attorney is to do justice; to seek the truth and do what's right. [¶] . . . I want what's right because that's my job. That's my obligation. [¶] The defense are here-- [defense counsel], I'm not going to take anything away from him. He's [defense counsel] a fine attorney. He did a good job. But the truth is, his job is to do the best he can to make sure that his client is not convicted." The prosecutor also made comments about how his job was to help the witness think straight, not to confuse the witness or to confuse the jury. Defendant claims that the clear insinuation from these statements was

that defense attorneys in general lie, distort the facts, and camouflage the truth to confuse the jury.

Defendant relies on *People v. Hawthorne* (1992) 4 Cal.4th 43. In *Hawthorne*, our Supreme Court determined the prosecutor committed misconduct when she impugned the integrity of defense counsel by insinuating that "law enforcement has an obligation to ascertain 'the true facts surrounding the commission of the crime' [citation], which defense counsel do not." (*Id.* at p. 59.) The trial court overruled the defense's objections to the statement. Our Supreme Court concluded that the trial court should not have "sanctioned the prosecutor's comments," because "[t]he closing statements of counsel should relate to the law and the facts of the case as each side interprets them." (*Id.* at p. 60.)

We find *Bell*, *supra*, 49 Cal.3d 502 instructive. In *Bell*, the prosecutor stated: " 'It's a very common thing to expect the defense to focus on areas which tend to confuse. That is--and that's all right, because that's [defense counsel's] job. If you're confused and you're sidetracked, then you won't be able to bring in a verdict.' He also said: 'It's his job to throw sand in your eyes, and he does a good job of it, but bear in mind at all times, and consider what [defense counsel has] said, that it's his job to get his man off. He wants to confuse you.' " (*Id.* at p. 538.) The court concluded that "[h]ere the prosecutor acknowledged that defense counsel's comments were proper and that he was just doing his job. His remarks could be understood as a reminder to the jury that it should not be distracted from the relevant evidence and inferences that might properly and logically be drawn therefrom. Nonetheless, to the extent that the remarks might be understood to suggest that counsel was obligated or permitted to present a defense dishonestly, the argument was improper. (See former Rules Prof. Conduct, rule 7-105 [a member of the State Bar 'shall not seek to mislead the . . . jury by an artifice or false statement of fact or law.'].)" (*Ibid.*)

23

Like *Bell*, the prosecutor's statements can be interpreted as a reminder to the jury not to be persuaded by defense tactics and the defense evidence. However, the statements were improper to the extent the jury may have understood them as asserting that defense attorneys in general are allowed to lie and distort the facts. Whether any misconduct occurred is arguable. Nonetheless, even where there was misconduct we would conclude it was harmless. (*People v. Medina* (1990) 51 Cal.3d 870, 896.) As we will explain later, there was no prejudicial effect on defendant's trial.

**Mischaracterization of the Voir Dire Process**

Next, defendant claims the prosecutor committed misconduct when he improperly characterized the voir dire process. During closing argument, the prosecutor stated: "But if you also remember, I chose you. [¶] When we go to the end, [defense counsel] had no choices left but to accept you guys because he didn't have any more chances to say, I want to get rid of you. I did. The judge said, You have one challenge left. And I said, No, this is the jury I want because this is the jury that's going to do justice in this case. [¶] This is the jury who's going to listen to the facts, listen to the law and is not going to be confused or misled."

These statements were not improper considering their context. They were not an impermissible appeal to the self-interest, passions, or prejudices of the jury. Rather, the statements served as a reminder to the jury of their duty to examine the evidence, listen to the facts, and apply the law as instructed.

Furthermore, even if we construe the statements as defendant argues we should-- that the prosecutor improperly insinuated he "chose" the jury over the defense's objections--there would be no prejudice. It is evident that all the jurors were present during the voir dire process and would be able to recall that both the prosecutor and defense counsel exercised their respective rights to challenge prospective jurors. Additionally, the jury was instructed multiple times by the court that the attorney's

24

arguments were not evidence.  We presume the jury understood these instructions and were able to distinguish evidence from argument in this case.  (*People v. Fauber* (1992) 2 Cal.4th 792, 823.)

### Defendant's Testimony

Defendant argues the prosecutor improperly argued the only reason he testified was because he was guilty.  During closing argument, the prosecutor stated:  "And then we heard from [defense counsel, who talked] about how [defendant] valiantly took the stand despite the fact that we were going to hear about his convictions.  That's not about being valiant; it's being desperate.  He said it himself.  He could have sat back and not taken the stand.  He could have decided at that instant, The People are done; they didn't do enough.  I'm not taking the stand. [¶] Do you know why he took the stand?  Because he knows he's guilty and he knew you people already knew it.  So he took the big risk-- the risk, remember that.  Why would he take a big risk?  Because he's guilty and he wants to put one over.  Got nothing to lose.  Give it a shot.  No one else is going to stand up and say, I wasn't here.  I've got to do it."

Defendant contends the prosecutor's argument improperly commented on his exercise of his constitutional right to testify, relying on *Griffin v. California* (1965) 380 U.S. 609, 612-614.  However, *Griffin* addresses the constitutional right not to incriminate oneself and prohibits only a prosecutor's argument that invites or allows a jury to infer guilt from a defendant's *refusal* to testify on his or her own behalf.  (*Ibid.*)  Here, we are dealing with the opposite scenario:  the prosecutor's statement inferring guilt based on the defendant's testimony.

We question the prosecutor's choice of words, but his statement was not misconduct.  The prosecutor was merely asserting that given the weight of the evidence against defendant, any choice not to testify on his own behalf would have been tactically ill-advised.  With respect to argument, a "prosecutor is given wide latitude to vigorously

25

argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence." (*People v. Ledesma* (2006) 39 Cal.4th 641, 726.) Furthermore, a " 'prosecutor is permitted to urge, in colorful terms, that defense witnesses are not entitled to credence, . . . [and] to argue on the basis of inference from the evidence that a defense is fabricated . . . .' " (*People v. Tafoya* (2007) 42 Cal.4th 147, 182.) The prosecutor's statement was a commentary on the state of the evidence, which included defendant's testimony on his own behalf. This did not violate *Griffin v. California*, *supra*, 380 U.S. at pages 612 through 614.

### Failure to Produce Witnesses

Defendant claims misconduct occurred when the prosecutor commented on his failure to produce alibi witnesses. During his rebuttal argument, the prosecutor stated: "Why didn't someone come from [defendant's] work and say he was working? Why didn't the people who lived in the front of the house come in here and say his truck was parked right there in front of the house and he was in the house? Why not? Because it's not true."

It is well settled that "[c]omment on the failure to call a logical witness is proper." (*Bell*, *supra*, 49 Cal.3d at p. 539.) However, defendant insists the prosecutor erred when he explained why potential defense witnesses did not testify, citing to *People v. Gaines* (1997) 54 Cal.App.4th 821, 822, 825 (*Gaines*).

In *Gaines*, the appellate court concluded it was misconduct when a prosecutor made statements about why a witness did not testify. The court held that "[a]lthough 'a prosecutor may argue to a jury that a defendant has not brought forth evidence to corroborate an essential part of his defensive story' [citation], the comments here were not so limited." (*Gaines*, *supra*, 54 Cal.App.4th at p. 825.) There, the prosecutor argued the missing witness was going to testify contrary to what the defendant had testified, the defense had somehow managed to get the witness " 'out of here,' " and the People had

26

attempted to get the witness on the stand after it was clear the defense was not going to call the witness to the stand. (*Ibid*.) The court reasoned that "to say only that the prosecutor got ahead of his evidence is far too benign. The prosecutor was in plain effect presenting a condensed version of what he was telling the jury would have been [the witness'] testimony. When this tactic is achieved in the guise of closing argument, the defendant is denied Sixth Amendment rights to confrontation and cross-examination." (*Ibid*.)

Here, the prosecutor argued that defendant's neighbors, coworkers, or employers were all logical witnesses that could have supported his alibi. The implication in the prosecutor's statements--that the witnesses were not called because they would not have aided his defense--is readily inferred whenever a prosecutor comments on a defendant's failure to produce a logical witness. In fact, *Gaines* provides direct support for a prosecutor's ability to comment on the unavailability of witnesses or evidence by noting that " 'a prosecutor may argue to a jury that a defendant has not brought forth evidence to corroborate an essential part of his defensive story.' " (*Gaines*, *supra*, 54 Cal.App.4th at p. 825.) Unlike the flagrant misconduct in *Gaines*, the prosecutor did not state or imply absent witnesses would have testified as to a particular fact and did not provide a condensed version of what he believed the testimonies of those witnesses, if called, would have been. Therefore, no misconduct occurred.

**Bat as a Deadly Weapon**

Lastly, defendant argues the prosecutor committed misconduct when he stated: "No one's questioning that the baseball bat was a deadly weapon in this case." The prosecutor revisited the issue a short while later, explaining: "And as I said, with respect to the deadly weapon, there's really no dispute that the bat was a deadly weapon. But to clarify, if it's a deadly weapon, you can have an actual deadly weapon, gun or knife,

which we don't have in this case, but something inherently dangerous if it's used a certain way. The bat, the way it was used in this case is a deadly weapon."

Defendant argues the People improperly misstated the law and shifted the burden of proof by asserting that a bat is an inherently deadly weapon. We disagree. The prosecutor was merely pointing to the fact that defendant had not disputed whether the bat was used as a deadly weapon during the trial. Indeed, defendant did not present evidence that the bat was not used as a deadly weapon; his defense was that he was not the one who committed the assault. Accordingly, we reject defendant's claim of misconduct on this ground.

**Reversibility**

We conclude the prosecutor may have committed arguable misconduct when he implied that defense counsel's job was to confuse the facts and mislead the jury, while the prosecutor's role is to elicit the truth. However, we are not persuaded that this limited incident of arguable misconduct warrants reversal of the jury's verdict.

The statements challenged by defendant on appeal constitute only a fraction of the prosecutor's closing argument. Additionally, the jury was specifically instructed by the court that the attorneys' arguments were not evidence and that they were not to be swayed by public opinion or public feeling. "The presumptions that jurors understand and follow their instructions [citation] and do not draw the most damaging inferences from ambiguous arguments [citation] minimize our concern that the instant jury's verdict was influenced by a misapplication of the prosecutor's remarks." (*People v. Shazier* (2014) 60 Cal.4th 109, 150-151.)

We also disagree with defendant's assertion that there was a pattern of misconduct so egregious that it infected the trial with a fundamental unfairness. The limited instance of arguable misconduct does not give rise to a constitutional violation on the state or federal level. No reversible error appears.

28

Accordingly, we also conclude that defendant's trial counsel did not render ineffective assistance for his failure to object to the alleged incidents of misconduct. Defendant has failed to demonstrate he was prejudiced by his counsel's alleged failures. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 697.)

5. *Cumulative Error*

Defendant argues cumulative error due to the court's failure to instruct on the lesser included offenses of misdemeanor child abuse and simple assault and the alleged incidents of prosecutorial misconduct require reversal of his convictions for counts 1, 2, and 3. Since we find no instructional error and no reversible prosecutorial misconduct, we reject defendant's claim of cumulative error. (*People v. Stitely* (2005) 35 Cal.4th 514, 560.) "A defendant is entitled to a fair trial, not a perfect one." (*People v. Mincey* (1992) 2 Cal.4th 408, 454.)

6. *Unauthorized Sentence for Misdemeanor Vandalism* (*Count 6*)

Defendant was convicted of misdemeanor vandalism in count 6. The trial court sentenced him to a term of 25 years to life plus 13 years for this conviction. Defendant argues this sentence is unauthorized, because the Three Strikes law does not apply if the current offense is a misdemeanor (see §§ 667, subd. (b), 1170.12, subd. (a); *People v. Trausch* (1995) 36 Cal.App.4th 1239, 1245), and the maximum sentence for a misdemeanor conviction of vandalism is one year in county jail (§ 594, subd. (b)(2)(A)). Furthermore, enhancements for prior serious felony convictions and prior prison terms are inapplicable to misdemeanors. (§§ 667, subd. (a), 667.5, subd. (b).)

The People concede that defendant's sentence of 25 years plus 13 years for his conviction of misdemeanor vandalism is statutorily unauthorized, and we agree. We therefore remand the matter to the trial court for resentencing on this count.

7. *Dual Convictions and Sentences for Aggravated Assault* (*Counts 2 and 3*)

Defendant was found guilty of aggravated assault on Amber V. in counts 2 and 3: assault with a deadly weapon in violation of former section 245, subdivision (a)(1) (count 2) and assault by means likely to produce great bodily injury in violation of former section 245, subdivision (a)(1) (count 3).  Defendant argues these dual convictions are unauthorized and violate the constitutional prohibition against double jeopardy.  He also claims his trial counsel rendered ineffective assistance for failing to object to the convictions.  The People agree that defendant's two convictions for aggravated assault against Amber V. are unauthorized and urge us to vacate the conviction and sentence on count 3.  We accept the People's concession.

Section 954 provides in pertinent part:  "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense . . . .  [t]he prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading."  The People can obtain multiple convictions based on a single criminal act or an indivisible course of conduct if the charges allege separate offenses that are not lesser or greater included offenses.  (*People v. Benavides* (2005) 35 Cal.4th 69, 97.)

However, a defendant cannot be convicted of multiple offenses based on different legal theories of the same crime.  In *People v. Craig* (1941) 17 Cal.2d 453, 454-455, the court held one conviction of rape was proper because there was evidence of only a single act of sexual intercourse with a minor.  *People v. Coyle* (2009) 178 Cal.App.4th 209, 211, 217-218, held that only one conviction of murder was permissible because there was one killing, even though the jury returned guilty verdicts on two counts of felony murder and one count of second degree murder.  Courts have also concluded that only a single conviction can be sustained when there was merely one act alleged that violated multiple

subdivisions of the same criminal statute. (See *People v. Muhammad* (2007) 157 Cal.App.4th 484, 486, 494; *People v. Ryan* (2006) 138 Cal.App.4th 360, 369.)

Here, the prosecution only alleged a single incident of assault against Amber V., which occurred when defendant hit the bat against Valdez's car window. Therefore, defendant's two convictions on two alternate theories of aggravated assault are unauthorized. Accordingly, we vacate defendant's conviction and sentence for count 3, assault by means of force likely to produce great bodily injury in violation of section 245, subdivision (a)(1).[8]

8. *Sentence for Misdemeanor Vandalism (Count 7) Violated Section 654*

Defendant argues the court violated section 654 when it did not stay his sentence for misdemeanor vandalism of Valdez's car (count 7). He argues the offense arose out of the same physical act as his conviction for child abuse.[9]

Section 654 provides in pertinent part: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

---

[8] Typically, courts reverse the less serious conviction. (See, e.g., *People v. Moran* (1970) 1 Cal.3d 755, 763.) Defendant and the People agree that his conviction for count 3, assault with the intent to produce great bodily injury, is less serious that his conviction on count 2, assault with a deadly weapon, because assault with a deadly weapon is a serious felony (§ 1192.7, subd. (c)(31)), while assault with the intent to produce great bodily injury is not necessarily a serious felony.

Because we reverse the conviction on count 3, we need not address defendant's claims regarding the constitutional prohibition on double jeopardy and ineffective assistance of counsel.

[9] The trial court had stayed the sentences for counts 2 and 3 (aggravated assault of Amber V.) under section 654 after concluding the offenses arose out of the same physical acts as count 1 (child abuse of Amber V.). However, the court imposed a term of one year in county jail for his conviction of misdemeanor vandalism of Valdez's car (count 7), to run concurrently with his aggregate prison terms in counts 1 and 6.

31

Section 654 applies when there is a single criminal act or omission from which a defendant suffers multiple punishments. (*People v. Jones* (2012) 54 Cal.4th 350, 358 (*Jones*).) "[I]t is well settled that section 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor." (*People v. Perez* (1979) 23 Cal.3d 545, 551.) If all the offenses were incident to one objective, the defendant may not be punished more than once, e.g., a defendant who attempts murder by setting fire to the victim's bedroom cannot be punished for both arson and attempted murder, because his primary objective was to kill, and the arson was the means of accomplishing that objective and thus merely incidental to it. (*Ibid.*) The purpose of the protection against multiple punishments is to ensure the defendant's punishment will be commensurate with his criminal culpability. (*Id.* at p. 552, fn. 4.)

Whether a defendant's crimes involved multiple objectives is generally a factual question for the sentencing court, and we will uphold a court's express or implied determination on this matter if it is supported by substantial evidence. (*People v. Coleman* (1989) 48 Cal.3d 112, 162.)

Here the vandalism and child abuse crimes were committed contemporaneously.[10] The evidence at trial established that defendant hit Valdez's car once when he smashed the passenger window where Amber V. was sitting. Therefore, defendant committed

---

[10] The People argue that defendant committed two separate acts: (1) assaulting Amber V. by swinging the bat towards her and (2) vandalizing Valdez's car by breaking the window. We find this characterization of the offense unavailing. All evidence points to one act, not two. There is nothing to indicate there was any temporal pause between the defendant swinging the bat toward Amber V. and defendant breaking the window. Therefore, we are unconvinced that defendant's act of shattering the car window actually constituted two separate acts.

32

felony child abuse at the same time he vandalized Valdez's car. A single act can only be punished once even if a defendant harbors separate intents. (*Jones*, *supra*, 54 Cal.4th at p. 358.) Accordingly, the sentence for his misdemeanor vandalism conviction in count 7 must be stayed.

Furthermore, even if we were to find that the child abuse and vandalism were separate acts, multiple punishments would only be proper if sufficient evidence supported the trial court's implied finding that they were committed with separate intents and objectives. There is nothing in the record to support the inference of separate intents with respect to the vandalism and child abuse counts. Indeed, it seems clear there was only an intent to harm Amber V. Amber V. testified at trial that before defendant swung the bat, he made eye contact with her and threatened her. He then swung the bat at the window where she was sitting. No other evidence was introduced to show defendant harbored a separate intent to vandalize the car. Accordingly, defendant's sentence for misdemeanor vandalism (count 7) must be stayed.

9. *Fines and Fees*

Defendant argues the court erred in calculating his restitution fine (§ 1202.4, subd. (b)) and parole revocation fine (§ 1202.45), because it erroneously considered stayed counts in its calculation. He also insists the court should not have imposed a parole revocation fine for his misdemeanor vandalism conviction (count 6). He further contends his trial counsel was ineffective for failing to object to the fines. For the reasons set forth below, we conclude it is necessary to remand the matter to the trial court for a recalculation of the fines.

Section 1202.4, subdivision (b) provides, in pertinent part, that a restitution fine must be imposed "[i]n every case where a person is convicted of a crime." Imposition of a restitution fine is mandatory unless the sentencing court "finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (*Ibid*.) In

33

every case where a court imposes a restitution fine under section 1202.4, subdivision (b), imposition of a parole revocation fine in the same amount is also mandatory when a defendant is subject to a period of parole. (§ 1202.45.) Furthermore, in every case where a court imposes a restitution fine under section 1202.4, subdivision (b), and a defendant is subject to a period of probation, a court must impose a probation revocation restitution fine in the same amount. (§ 1202.44.)

Here, the trial court orally ordered the following restitution fines and parole revocation fines: "There would be a restitution fine of two hundred dollars for Count 1, 6, four hundred dollars total, with an additional parole revocation of four hundred dollars, a portion equally in the same manner as the restitution fine. . . . The Counts 2 and 3, those which I have stayed, there would be a two hundred dollar restitution fee for each of those, and a parole revocation restitution fine of two hundred dollars for each . . . ."

The court also orally imposed an $80 ($40 for each count) court operations assessment fee under section 1465.8 for count 1 (child abuse) and count 6 (misdemeanor vandalism). It also imposed a $60 ($30 for each count) criminal conviction assessment under Government Code section 70373 for count 1 and count 6. It further imposed a "criminal conviction assessment of thirty-four each" and "security fee of forty-four each" for defendant's convictions for aggravated assault in counts 2 and 3.

The criminal conviction assessment and "security fee" for counts 2 and 3 are not reflected in the abstract of judgment. Additionally, although the court orally imposed restitution fines totaling $800 and a matching parole revocation fine of $800 during sentencing, the abstract of judgment reflects only a restitution fine of $400 and a matching parole revocation fine of $400. When there is a discrepancy between the oral pronouncement of a sentence and the minute order or the abstract of judgment, the oral pronouncement governs. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Therefore, the fines and fees listed in the abstract of judgment are not controlling.

There are several issues with the fines and fees imposed by the trial court in defendant's case. We address each of the problems below and determine the most appropriate remedy is to direct the trial court to reconsider the amount of fines to be imposed on remand.

**Stayed Conviction**

First, it appears the trial court erroneously considered defendant's stayed conviction for count 2, assault with a deadly weapon, for purposes of calculating the restitution fine under section 1202.4, subdivision (b) and the parole revocation fine under section 1202.45.

The People contend defendant has forfeited this argument, because he failed to object at the sentencing hearing. However, defendant's failure to object does not constitute forfeiture of the section 654 issue, because "[i]t is well settled . . . that the court acts 'in excess of its jurisdiction' and imposes an 'unauthorized' sentence when it erroneously stays or fails to stay execution of a sentence under section 654." (*People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17.)[11]

Furthermore, defendant also challenges the restitution fine and parole revocation fine on the ground of ineffective assistance of counsel. In order to prevail, defendant must show that counsel's performance fell below a standard of reasonable competence and he was prejudiced by the deficient performance. (*Strickland v. Washington*, *supra*, 466 U.S. at pp. 687-688.)

As this court held in *Le*, "a restitution fine calculated under the formula provided by section 1202.4, subdivision (b)(2), constitutes a criminal penalty . . . ." (*People v. Le* (2006) 136 Cal.App.4th 925, 933 (*Le*).) Therefore, "the section 654 ban on multiple punishments is violated when the trial court considers a felony conviction for which the

---

[11] Since we conclude defendant has not forfeited this argument, we need not address his argument that his trial counsel was ineffective for failing to object.

35

sentence should have been stayed pursuant to section 654 as part of the court's calculation of the restitution fine under the formula provided by section 1202.4, subdivision (b)(2)." (*Id*. at p. 934.) Although here the court did not use the discretionary formula under section 1202.4, subdivision (b)(2), it expressly stated it was relying on defendant's stayed convictions in its calculation of his restitution fine. The court erred in this regard. (See *People v. Sencion* (2012) 211 Cal.App.4th 480, 483; *Le*, *supra*, at pp. 932-933.)

Accordingly, we conclude defendant's counsel's failure to object was prejudicial, as had he objected there was a reasonable probability the court would have reduced the amount of the fines. On remand, the trial court will be directed not to consider stayed counts in its calculation of defendant's restitution fine and parole revocation fine.

**Vacated Conviction**

Furthermore, the court considered defendant's conviction for count 3, assault by means likely to produce great bodily injury, for purposes of calculating the restitution and parole revocation fines. We vacated defendant's conviction for count 3 in a previous portion of this opinion. Therefore, the court should not consider this conviction when calculating any restitution fines, probation revocation fines, or other fees. Accordingly, we also strike the security fee and criminal conviction assessment imposed on this conviction.

**Misdemeanor Vandalism**

Lastly, the court imposed a $200 parole revocation fine for defendant's conviction of misdemeanor vandalism (count 6). Defendant is not subject to a period of parole for this misdemeanor. The People concede that a parole revocation fine should not be imposed for this count.

However, simply striking the parole revocation fee attributed to defendant's count of misdemeanor vandalism (count 6) would result in a restitution fine and a parole

36

revocation fine that are not equal to each other. Section 1202.45 requires that the parole revocation fine be the same amount as the restitution fine imposed under section 1202.4, subdivision (b).

Indeed, the Third Appellate District considered a similar situation in *People v. Holmes* (2007) 153 Cal.App.4th 539 (*Holmes*). In *Holmes*, the trial court imposed a $400 restitution fine and a $400 parole revocation fine for Holmes' felony conviction. (*Id*. at p. 546.) The trial court also imposed a $100 restitution fine and a $100 probation revocation restitution fine for Holmes' misdemeanor conviction. (*Ibid*.) On appeal, the People argued the imposition of two restitution fines in one proceeding constituted an unauthorized sentence. The appellate court found no error, noting that the trial court "could not impose a restitution fine in the amount of $500 to cover both the felony and the misdemeanor because the parole or probation revocation restitution fine had to be in the same amount." (*Id*. at pp. 547-548.) Therefore, the appellate court held the trial court did not err in imposing separate restitution fines for the defendant's felony and misdemeanor convictions. (*Id*. at p. 548.)

As in *Holmes*, defendant was convicted of both felonies and misdemeanors. Therefore, on remand the trial court should recalculate the applicable restitution (§ 1202.4, subd. (b)) and parole revocation fine (§ 1202.45). The court should impose a separate restitution fine (§ 1202.4, subd. (b)) for defendant's misdemeanor conviction for count 6.[12] (*Holmes, supra*, 153 Cal.App.4th at pp. 547-548.) Because defendant was not granted probation for his misdemeanor conviction for count 6, a probation revocation fine (§ 1202.44) should not be imposed. Furthermore, because defendant is not subject to a

_____

[12] Typically, it is error for a court to impose separate restitution fines and parole revocation fines as to each count. (See *People v. Sencion, supra*, 211 Cal.App.4th at pp. 482-483.) A court may only impose one restitution fine per case under section 1202.4, subdivision (b)(1), and one parole revocation restitution fine under section 1202.45. (*People v. Sencion, supra*, at pp. 482-483.)

period of parole for his misdemeanor conviction, a parole revocation fine (§ 1202.45) should not be imposed for that count.

**Summary**

Based on the number of errors with the fines and fees imposed in defendant's case, we find it appropriate to remand the issue to the trial court for reconsideration. On remand, the trial court is directed to recalculate the restitution fine and parole revocation fine in light of our vacating of defendant's aggravated assault conviction for count 3 and the staying of his aggravated assault conviction for count 2. The trial court should impose a separate restitution fine for defendant's misdemeanor conviction for count 6 as articulated in *Holmes*, *supra*, 153 Cal.App.4th 539. No parole revocation fine should be imposed for his misdemeanor conviction. We strike the security fee and criminal conviction assessment imposed for defendant's conviction for count 3.

10. *Presentence Credit*

Lastly, defendant argues the trial court erred when it calculated his presentence credit by erroneously applying the Three Strikes law's 20-percent postsentence credit limitation. (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5).) The People concede this issue, and we find the concession appropriate.

Defendant was given 81 days of presentence credit based on 405 actual days in custody. Defendant's presentence credit was calculated by multiplying his 405 actual days by 20 percent, which resulted in 81 days. However, the 20 percent limitation on credit under the Three Strikes law is inapplicable to *presentence* credit. Therefore, the court erred when it only awarded him 81 days conduct credit, because his conduct credit should have been calculated under section 4019, the statute that governs presentence conduct credit. (*People v. Thomas* (1999) 21 Cal.4th 1122, 1130; *People v. Philpot* (2004) 122 Cal.App.4th 893, 907.)

Defendant's offenses were committed in February 2010.  At that time, former section 4019 allowed certain defendants to accrue conduct credit at the rate of two days for every two days actual custody.  (*People v. Brown* (2012) 54 Cal.4th 314, 318, fn. 5.)  Defendants who were required to register as a sex offender, were committed for a serious felony, or had a prior conviction for a serious or violent felony, were excluded from the increased conduct credit calculation of two days for every two days actual custody.  (*Ibid*.)  Instead, these defendants would earn conduct credit at a rate of two days for every four actual days custody.  (Stats. 2009-2010, 3d Ex. Sess., 2009-2010, ch. 28, § 50, eff. Jan. 25, 2010.)

One of defendant's present convictions (assault with a deadly weapon, former § 245, subd. (a)(1)) is for a serious felony (§ 1192.7, subd. (c)(31)).  Two allegations of prior serious felony convictions were also sustained for first degree burglary (§ 459) and dissuading a witness (§ 136.1, subd. (c)(1)).  Therefore, defendant was not eligible to earn conduct credit at the increased rate of two days for every two days of actual custody.  However, he was entitled to earn two days conduct credit for every four days of actual custody under the applicable version of section 4019.  (See Stats. 2009-2010, 3d Ex. Sess., 2009-1010, ch. 28, § 50, eff. Jan. 25, 2010.)  Accordingly, defendant must be awarded a total of 202 days of conduct credit for his 405 days of actual custody.

## DISPOSITION

The judgment is reversed.

On remand, the trial court is directed to resentence defendant for his conviction for misdemeanor vandalism (Pen. Code, § 594, subd. (a)(1); count 6) for a term not to exceed the statutory maximum of one year in county jail.

Defendant's conviction for assault by means likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a)(1) (count 3) is vacated.

The trial court is directed to stay defendant's sentence for misdemeanor vandalism (count 7) pursuant to Penal Code section 654.

The trial court is directed to reconsider defendant's restitution fine (Pen. Code, § 1202.4, subd. (b)) and parole revocation fine (Pen. Code, § 1202.45) in light of the stay of sentence for count 2 and our vacating of count 3. The trial court may impose a separate restitution fine for defendant's misdemeanor conviction for count 6 as articulated in *People v. Holmes* (2007) 153 Cal.App.4th 539. Because defendant was not granted probation for his misdemeanor conviction for count 6, a probation revocation fine (Pen. Code, § 1202.44) should not be imposed. Additionally, because defendant is not subject to a period of parole for his misdemeanor conviction a parole revocation fine (Pen. Code, § 1202.45) should not be imposed. The security fee and criminal conviction assessment imposed for count 3 are stricken.

Defendant is awarded a total of 202 days conduct credit.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.