Filed 8/12/15  People v. Moore CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JUNIOR MOORE,<br><br>        Defendant and Appellant. | B255353<br><br>(Los Angeles County<br>Super. Ct. No. MA055675) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathleen Blanchard, Judge.  Affirmed.

Eric Cioffi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In an information, the People charged defendant Junior Moore with arson of an inhabited structure (Pen. Code,[1] § 451, subd. (b); count 1) and seven counts of attempted willful, deliberate and premeditated murder (§§ 187, subd. (a), 664; counts 2-8). As to all counts, the People further alleged that defendant suffered two prior serious or violent felony convictions within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12) and two serious felony convictions within the meaning of section 667, subdivision (a), and that he served two prior prison terms within the meaning of section 667.5, subdivision (b).

A jury found defendant guilty on the arson count and not guilty on the attempted murder counts. In a bifurcated trial, the trial court subsequently found all prior conviction and prison term allegations to be true.

The trial court sentenced defendant to state prison for a term of 25 years to life under the three strikes law, plus two consecutive five-year terms pursuant to section 667, subdivision (a). In the interests of justice, the court struck the one-year prior prison term enhancements.

Defendant contends that the prosecutor committed prejudicial misconduct during his summation to the jury, resulting in a violation of his right to due process and his Sixth Amendment right to confrontation. We conclude that the prosecutor's remarks did not rise to the level of prosecutorial misconduct, and that in any event any error was harmless under both state and federal standards. We therefore affirm the judgment.

---

[1]     All further statutory references are to the Penal Code.

**FACTS**

**A. *Trial Evidence***

The three Moore brothers, Tori, Nacho,[2] and defendant all lived together in a house on Raysack Avenue in Lancaster. Defendant had moved into the house the day before the incident giving rise to this case. Tori's girlfriend, Berethea Perkins, and her three young children also lived in the home.

On March 16, 2012, Berethea's friend, Ashley Mingo, stopped by the house to visit. Nacho's girlfriend, Adrianna McGinnis, and their infant daughter, also were visiting.

Sometime prior to 5:00 p.m. on March 16, defendant began consuming hard liquor. At times, he appeared angry and drunk. Later that evening in the living room, defendant began talking to Ashley and asked her out. Ashley told defendant that she was not interested in dating him because she liked women. Defendant became angry and "got in [Ashley's] face." He repeatedly called her "bitch" and threatened to "chop up" and burn her body and leave her in the desert. Tori tried unsuccessfully to calm his brother down.

Around 10:00 p.m., Tori, Berethea, and Ashley left the living room and eventually went into the master bedroom and closed the door. Ashley was not comfortable staying in the living room with defendant, and Berethea was "kinda scared." Adrianna and her daughter were asleep in a separate room, Nacho's bedroom. Berethea and Ashley heard defendant yelling in the living room and pounding on the couch. He was angry. Adrianna heard someone hitting the refrigerator.

---

[2]    We refer to Tori, Nacho and the other visitors to the home on the day of the incident by their first names to avoid confusion. No disrespect is intended.

At Berethea's request, Nacho took her two children[3] into the bedroom where Adrianna and Nacho's daughter were sleeping. Nacho then moved the dresser next to the door and sat on it to prevent defendant from entering the room.

Defendant knocked on the door to the master bedroom and asked to talk to Ashley twice. Tori told defendant to wait and closed the door. When defendant knocked a third time and asked to speak with Tori, Tori told him he would talk to him later. Shortly thereafter, the smoke alarm in the house went off. Ashley opened the door of the master bedroom and saw flames reaching the ceiling in the unoccupied children's bedroom across the hall. Ashley ran into the hallway and called 911. Berethea saw the flames as well. The bed was on fire, and there was smoke and flames all around. Berethea went straight to Nacho's room to get the children. Berethea opened the door and screamed, "it's a fire." Nacho jumped up, and Berethea took her children. Adrianna also saw the flames and left the house with her daughter.

Tori and Nacho attempted to extinguish the fire, using cups of water. Nacho then grabbed a garden hose and sprayed water on the fire as Tori tried to stomp it out. Berethea did not know where defendant was; he had disappeared. After the fire was out, Berethea saw defendant enter the house through a kitchen door that connects to the garage.

Berethea put the children into her car and drove them to Tori's sister's home. When Berethea returned to her residence, Tori and defendant were arguing and pushing each other. Tori told defendant to leave, but defendant refused. Defendant entered the house and removed the smoke detectors in the hallway. He then went into the bedroom where the fire had started and attempted to unlock and to leave through the window.

At the time the fire started, defendant was the only person in the house who was not in a bedroom. Defendant did not knock on anyone's door and announce there was a fire. At no time did defendant try to put out the fire.

---

[3]  Berethea's oldest daughter was not at the house on the day of the fire.

4

According to Berethea, defendant had a lighter with him when he moved into the house. On the day of the fire, Ashley saw defendant use a lighter to light a cigarette.

Los Angeles County Deputy Sheriff Kimberly Boissier arrived at the Raysack Avenue residence and interviewed Tori, Nacho, Ashley, and Berethea. Deputy Boissier testified that their statements were relatively consistent with one another.[4]

Detective Enrique Velazquez, a bomb technician and arson investigator with the Los Angeles County Sheriff's arson explosives detail, arrived at the crime scene around 1:00 a.m. He observed a mattress and box spring in the front yard. The floor of the house was extremely wet, and the house smelled of smoke. The detective determined that the fire originated in the children's bedroom. He saw no signs of accidental fire in the room. The electrical outlets were not damaged, and there was nothing wrong with the overhead light. There were no incendiary lamps, cigarette butts, matches or lighters in the room. Detective Velazquez did not see any fire damage in the northwest bedroom, which was the master bedroom, or the southeast bedroom, which was Nacho's room, the kitchen or the living room.

Detective Velazquez also examined the burned mattress and box spring, which were in the front yard. The burn patterns showed that there were two unconnected ignition points on the bed, indicating that someone deliberately set the fire. There was damage under the box spring and on the right corner of the mattress, suggesting that someone deliberately set the bed on fire at each point. The material between these two points was not burned.

Based on the burn pattern on the mattress and the lack of accidental sources of fire, Detective Velazquez opined that someone intentionally set the fire. Witness accounts that the flames were at eye level led the detective to believe the fire was caused by an open flame and was rapidly developing.

---

[4] The contents of these statements are unknown.

Los Angeles County Deputy Sheriff Ronald Carter transported defendant from the scene. Deputy Carter advised defendant of his *Miranda*[5] rights, and defendant agreed to talk. Deputy Carter asked defendant if he had access to any type of lighter. Defendant confirmed that he had a yellow Bic lighter. Later, defendant spontaneously stated that he knew what he was doing with fire because he learned about it in fire camp. Deputy Carter booked defendant's property, which did not include a lighter, matches, or any type of incendiary device.

When Detective Velazquez interviewed defendant, defendant angrily denied starting the fire. Defendant volunteered, however, that he had worked in a fire camp, that he "knew fire," and that he was not afraid of fire.

## B. *Facts Relevant to Prosecutorial Misconduct Claim*

During trial, the People called Berethea, Ashley, and Adrianna to testify as witnesses but did not call Tori or Nacho. In his rebuttal summation to the jury, the prosecutor stated, "So I want to talk real quickly [about] one thing I forgot to mention earlier. If anyone asks why didn't we bring the brothers up to testify, Tori or Nacho, well, the first thing is that this has created enough familial strain already and I'm not going to put the brothers on the stand to testify against each other." At this point, the following transpired:

"[DEFENSE COUNSEL]: Objection. Improper argument.

"THE COURT: Sustained.

"[DEFENSE COUNSEL]: Move to strike.

"THE COURT: Counsel, the jury has been instructed.

"[PROSECUTOR]: I'm not gonna put a brother up there to testify . . . against another brother.

"[DEFENSE COUNSEL]: Same objection.

---

5      *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694].

6

"THE COURT: Counsel, I sustained the objection. Please move on."

The prosecutor then went on to argue, "The other thing is that we heard testimony about the brothers, about their statements when they were made originally to Deputy Boissier. She testified that she got similar statements from everybody." Defendant did not object to this statement.

## DISCUSSION

Defendant contends "that the prosecutor committed misconduct during his rebuttal argument by (1) arguing facts not in evidence, (2) telling the jury that unsworn witnesses ([Tori and Nacho]) would have testified against [him] if called by the prosecution, (3) telling the jury that the brothers['] 'statements' . . . were repetitive of the other witnesses, and (4) vouching for the credibility of the other witnesses [by implying] that the brothers' testimony would have been similar had they testified." These contentions are based upon the two statements to which defendant successfully objected in combination with the statement to which he did not object.

### A. *Applicable Law*

"The prosecution is given wide latitude during closing argument to vigorously argue its case and to comment fairly on the evidence, including by drawing reasonable inferences from it." (*People v. Lee* (2011) 51 Cal.4th 620, 647; accord, *People v. Collins* (2010) 49 Cal.4th 175, 213; *People v. Harris* (2005) 37 Cal.4th 310, 345.) The prosecutor's remarks to the jury must be reviewed in the context of the whole argument and the jury instructions. (*People v. Centeno* (2014) 60 Cal.4th 659, 667; *People v. Adanandus* (2007) 157 Cal.App.4th 496, 513.) It is, however, improper for a prosecutor to refer to facts that are not in evidence when arguing to the jury (*People v. Linton* (2013) 56 Cal.4th 1146, 1207; *People v. Lopez* (2013) 56 Cal.4th 1028, 1073) or to "vouch[] for the credibility of witnesses or otherwise bolster[] the veracity of their testimony by

referring to evidence outside the record." (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 561.)

To determine whether improper conduct by the prosecutor constitutes misconduct under state law, we look to whether the prosecutor has used "'''''''deceptive or reprehensible methods'''''''" to attempt to persuade the court or jury. (*People v. Lloyd* (2015) 236 Cal.App.4th 49, 60.) Under federal law, improper conduct by the prosecutor will constitute misconduct if it "''''''so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process.'''''''" (*Id.* at p. 60.) Misconduct also may be found under federal standards if the improper conduct impinges on a constitutional right other than due process. (See, e.g., *People v. Waldie* (2009) 173 Cal.App.4th 358, 366 [prosecution's argument about defendant's pre-arrest silence violated Fifth Amendment right against self-incrimination but found harmless].)

The test for whether misconduct is prejudicial and warrants reversal also differs under state and federal law. Under state law standards, "[e]ven where a defendant shows prosecutorial misconduct occurred, reversal is not required unless the defendant can show he suffered prejudice." (*People v. Fernandez*, *supra*, 216 Cal.App.4th at p. 564, citing *People v. Arias* (1996) 13 Cal.4th 92, 161.) "'''A defendant's conviction will not be reversed for prosecutorial misconduct" that violates state law . . . "unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct." [Citation.]' [Citation.]" (*People v. Lloyd*, *supra*, 236 Cal.App.4th at pp. 60-61.)

By contrast, if federal constitutional error is involved, we analyze prejudice under the standard articulated in *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705]. (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 414-415 [violations of the confrontation cause are subject to *Chapman*'s harmless beyond a reasonable doubt analysis].) Under that standard, the People must "'prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" (*People v. Bolton* (1979) 23 Cal.3d 208, 214, citing to *Chapman*, *supra*, at p. 24.)

8

**B.** *Forfeiture*

Deputy Boissier's testimony—that she received relatively consistent statements from everyone she interviewed at the scene—was in the record without objection. The prosecutor's comment on this testimony thus could not be considered misconduct. Further, we conclude that defendant forfeited any claim that the prosecutor's comment was misconduct by failing to object to the comment in closing argument. (*People v. Lopez*, *supra*, 56 Cal.4th at p. 1073 ["to preserve the issue of prosecutorial misconduct on appeal, the defendant must both object *and* request a curative admonition unless such admonition would have failed to cure . . . any prejudice"]; see also *People v. Charles* (2015) 61 Cal.4th 308, 327; *People v. Centeno*, *supra*, 60 Cal.4th at p. 674.)

However, defendant did not forfeit his objection to the prosecutor's statement that he would not call a brother to testify against another brother. Defense counsel appropriately objected to these statements as "improper argument." Further, defense counsel moved to strike the prosecutor's remarks, in essence asking the trial court to let the jury know they should disregard the remark.

**C.** *Whether the Remarks Constituted Prosecutorial Misconduct*

By stating he would not put a brother on the stand to testify against another brother, the prosecutor was referring to facts not in evidence—namely that the brothers' testimony would be adverse to defendant. While inappropriate, we do not view these remarks as rising to the level of prosecutorial misconduct under either federal or state law. Under state standards, these brief remarks in rebuttal cannot be characterized as "deceptive" or "reprehensible" methods of persuasion. (See *People v. Gonzales* (2011) 51 Cal.4th 894, 946-947 [prosecutor's remarks regarding the murder victim's mother's shortcomings as a parent did not amount to deceptive or reprehensible methods of persuasion].)

Nor does defendant make any colorable argument that the prosecutor's inappropriate conduct was so pervasive and egregious that it rendered the trial unfair and a violation of defendant's federal due process rights. (See *People v. Hill* (1998) 17

9

Cal.4th 800, 815, 823-839 [prosecutor engaged in "outrageous and pervasive misconduct" by, among other things, misstating the evidence and the law, referring to facts not in evidence, directing derogatory comments to defense counsel and referring to the Bible when advocating for the death penalty].)

However, defendant also argues the remarks constitute federal error on the basis that they resulted in a violation of defendant's Sixth Amendment right to confront and cross-examine witnesses.[6] We discern no confrontation clause violation here. The prosecutor's allusion to facts not in evidence was improper, as discussed above, but there was in fact no testimony presented to the jury. The prosecutor's remarks were not evidence and had no testimonial content or detail. Nonetheless, to the extent the prosecutor's reference to facts not in evidence can be found to constitute constitutional error,[7] we analyze whether any misconduct warrants reversal.

---

[6]     We disagree with the People's contention this argument was forfeited. Although a constitutional claim may be forfeited by failing to assert it in a timely manner (*People v. Trujillo* (2015) 60 Cal.4th 850, 856), where a defendant in effect is "rais[ing] only a new constitutional 'gloss' on claims preserved below, that new aspect of the claims is not forfeited." (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at p. 364; *People v. Boyer* (2006) 38 Cal.4th 412, 441, fn. 17, disapproved on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.)

[7]     See *People v. Bolton*, *supra*, 23 Cal.3d at page 215, footnote 4 [suggesting, but not deciding, that prosecutorial argument which goes beyond the evidence admitted violates the defendant's Sixth Amendment right of confrontation]; *People v. Gaines* (1997) 54 Cal.App.4th 821, 825 [prosecutor's argument that witness, if called, would have impeached defendant's version, and that defense had secreted the witness preventing the People from presenting his testimony denied defendant his Sixth Amendment rights]; and *People v. Hall* (2000) 82 Cal.App.4th 813 (discussed in section D., below).

**D.** *Absence of Prejudice*

Even if the remarks are considered misconduct, we conclude that any error was harmless under either state or federal standards.

Here, the jury heard uncontradicted evidence that someone intentionally set fire to the bed in the unoccupied children's bedroom. At the time the fire started, Tori, Berethea, and Ashley were in the master bedroom with the door closed. Nacho, Adrianna, their daughter, and Tori and Berethea's two children were in Nacho's bedroom with the door closed. The only person who was not in a bedroom and who was in the house when the fire started was defendant, who was drunk and angry because Ashley had rejected his advances, and who had been heard minutes before punching furniture and the refrigerator. Defendant had repeatedly called Ashley a bitch and threatened to chop her up, burn her and leave her in the desert. The smoke detectors went off shortly after defendant's final unsuccessful attempt to speak to Tori or Ashley.

When the occupants of the bedrooms opened their doors and saw the flames in the children's bedroom, only defendant was missing. Defendant did not seek to warn the others of the fire, or assist in trying to extinguish the fire. Berethea saw defendant reenter the home from the garage minutes after Tori and Nacho put out the flames.

The evidence was uncontradicted that the fire was intentionally set. Both Berethea and Ashley saw defendant with a lighter, and defendant admitted to Deputy Carver that he had a yellow Bic lighter. Defendant also volunteered that he learned about fire in fire camp and knew what he was doing with fire. Defendant similarly volunteered to Detective Velazquez that he had worked in a fire camp, that he "knew fire," and that he was not afraid of fire.

The uncontradicted evidence that defendant started the fire is overwhelming[8] and compels the conclusion that the prosecutor's statements are not prejudicial under the state

---

[8] Arson, the crime for which defendant was convicted, is a general intent crime. (*People v. Atkins* (2001) 25 Cal.4th 76, 79.) In his closing arguments, defense counsel focused on whether defendant had the requisite intent to be convicted of attempted murder and all but conceded that defendant started the fire. "Simple explanation; the

11

or federal standard. The fact the trial court sustained the objections to the prosecutor's argument diminished any prejudice which may have flowed from misconduct. (*People v. Lopez*, *supra*, 56 Cal.4th at p. 1073, citing *People v. Hill*, *supra*, 17 Cal.4th at p. 845.) When defense counsel moved to strike, it would have been preferable had the trial court then instructed the jury to disregard the prosecutor's statements rather than stating the jury had already been instructed. Nonetheless, the trial court had previously instructed the jury that statements made by the attorneys during the trial are not evidence, and that the jurors had to decide all questions of fact from the evidence received at trial. The jury is presumed to have understood and followed the court's instructions. (*People v. McKinnon* (2011) 52 Cal.4th 610, 670.)

*People v. Hall*, *supra*, 82 Cal.App.4th 813, cited by defendant, is distinguishable. In that case, the People called only one of the arresting officers who recovered rock cocaine from the defendant. In his rebuttal, the prosecutor stated "[y]ou could have heard repetitive testimony from [the officer], basically telling you the same thing, that he was there and recovered the rock . . . ." (*Id*. at p. 816.) On these facts, the Court of Appeal concluded that the prosecutor committed prejudicial misconduct under either the federal or state standard. (*Ibid*.)

In contrast to *Hall*, where the case rested on the testimony of a single witness whose credibility was being attacked, this case rested on the testimony of three victims, who testified consistently with one another and whose credibility the defense did not challenge. In addition, unlike the *Hall* court, the trial court here immediately sustained the defense's objections to the prosecutor's improper suggestion that Tori and Nacho would have testified adversely to their brother.

---

man was drunk. He was acting out of his head. He is talking to people who aren't there. He was banging the walls. He's taking off his shirt and he's lighting mattresses on fire." "Are the actions of Mr. Moore, if it was Mr. Moore—it's like a closed room. You have seven people in a house and six of them can be accounted for. Maybe the seventh one did it. I wouldn't be so basis [*sic*] to argue otherwise. The question is what was his intent when he did it?"

12

Based on the evidence presented and defense counsel's argument to the jury, the main question for the jury was defendant's intent with respect to the attempted murder charges, and not whether he started the fire. We conclude it is not reasonably probable that a result more favorable to defendant would have been obtained absent the challenged conduct, and it is clear beyond a reasonable doubt that the error did not contribute to the verdict obtained. (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at p. 395 [the relevant inquiry is "'whether it is clear beyond a reasonable doubt that a rational jury would have reached the same verdict absent the error'"]; *People v. Capistrano* (2014) 59 Cal.4th 830, 873 [same]; *People v. Livingston* (2012) 53 Cal.4th 1145, 1159 [same].)

## DISPOSITION

The judgment is affirmed.

STROBEL, J.[*]

We concur:


PERLUSS, P. J.


SEGAL, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.